J. SCOTT MOEDE, OSB 934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
NAOMI SHEFFIELD, OSB 170601
Deputy City Attorney
naomi.sheffield@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
Of Attorneys for Defendant City of Portland

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DON'T SHOOT PORTLAND, a nonprofit corporation, in its individual capacity, NICHOLAS J. ROBERTS, in an individual capacity and on behalf of themselves and all others similarly situated, MICHELLE "MISHA" BELDEN, in an individual capacity and on behalf of themselves and all others similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>CITY OF PORTLAND, a municipal corporation,<br><br>DEFENDANT. | Case No. 3:20-cv-00917-HZ<br><br>DECLARATION OF LIEUTENANT FRANZ SCHOENING |

I, Lieutenant Franz Schoening, declare as follows:

1.     I am currently employed as a Lieutenant by the Portland Police Bureau ("PPB"). I have been employed in a sworn capacity by PPB since January 2002. I began my career as a police officer, predominantly in patrol. I was promoted to Sergeant in 2007 and was a patrol sergeant. I have held the rank of Lieutenant since 2018, when I was assigned to the Chief of Police's Office as the executive officer for the Operations Branch. Since April of 2019, I have

Page 1  –  DECLARATION OF FRANZ SCHOENING

been assigned to the Tactical Operations Division where I am currently assigned as the Commander of the Rapid Response Team ("RRT") and Canine Unit. I have been a member of the RRT since 2008.

2. As the Commander of the RRT I am responsible for overseeing the administration of the selection process and training of RRT members. One purpose of RRT within PPB is crowd management and crowd control. In instances of large outdoor gatherings, RRT is deployed to manage, facilitate and coordinate lawful public assemblies before and during the event. RRT coordinates, manages and facilitates both permitted and unplanned, spontaneous events. RRT members are trained in crowd theory and psychology, de-escalation techniques and uses specialized tactics and equipment.

3. PPB's RRT consists of four (4) Squads (Alpha, Bravo, Charlie and Delta). Each Squad consists of 10-15 members, overseen by a Squad Leader and an Assistant Squad Leader who are either Sergeants or Detectives. Typically, directives are given to the Squad Leaders or Assistant Squad Leaders by the Operations Lieutenant, and are passed to the Squad members.

4. Each squad typically has three grenadiers who are trained in the use of less lethal weapons such as a 40mm launcher or FN303[1]. The 40mm launcher is a less lethal platform that allows a variety of munitions to be fired from it. These can include foam tipped impact projectiles (beanbag replacement) and marking rounds that contain paint or powder that disperses on the target surface upon impact and "marks" the target. In addition, the 40mm launcher can be used to launch riot control agents such as smoke (obscurant), 2-chlorobenzalmalononitrile "CS gas" (what plaintiff calls "tear gas") and Oleoresin Capsicum Pyrotechnic ("OC pyrotechnic"). PPB uses Defense Technology brand "Skat Shell CS" and "Skat Shell OC" 40mm munitions for its launchable riot control agents.

---

[1] The FN303 is a compressed air driven less lethal launcher similar to a paintball gun that launches a specially designed plastic fin stabilized projectile with a bismuth (nontoxic) powder in the nose and a payload in the rear which can be paint, marking, training or Oleoresin Capsicum types.

Page 2 – DECLARATION OF FRANZ SCHOENING

5.  In addition to the launchable munitions mentioned above, sergeants and grenadiers also carry "hand toss" munitions. These can include distraction devices such as a rubber ball distraction device, or riot control agents such as CS gas, OC pyrotechnic and smoke. PPB uses Defense Technology brand "Triple-Chaser CS" and "Triple Chaser OC" canisters which separate into three smaller canisters and also uses a similar munition that is a single canister that discharges either CS or OC. Finally, PPB also uses an OC vapor canister that delivers OC in a mist that is effective but requires minimal decontamination.

6.  RRT is called out to events by an Incident Commander. Those callouts may be known and planned for in advance, or may happen spontaneously. The Incident Commander is typically the Precinct Commander in the Precinct where the event takes place. The Incident Command in this case has primarily been Captain Craig Dobson.

7.  The City's Crowd Management/Crowd Control policy is numbered 635.10 ("Directive 635.10") and is available at: https://www.portlandoregon.gov/police/article/649358

8.  The City's Use of Force policy is number 1010.00 ("Directive 1010.00) and is available at https://www.portlandoregon.gov/police/article/751998

9.  Directive 1010.00 authorize the use of riot control agents and munitions mentioned above by RRT. Specifically, Directive 1010.00, provides:

> 6.4.6.1. Authorized Uses in Crowd Control.
>
> 6.4.6.1.1. Under the direction of the Crowd Management Incident Commander (CMIC), to disperse a crowd, when a demonstration or event becomes a civil disturbance, as defined in Directive 635.10, Crowd Management/Crowd Control.
>
> 6.4.6.1.2. To stop or disrupt a group of individuals committing a crime or about to commit a crime, when other more discriminate methods are not feasible or reasonable, and uninvolved parties are unlikely to be subjected to the use of force.
>
> 6.4.6.1.3. When a person(s) engages in physical resistance or indicates the intent to engage in physical resistance.
>
> 6.4.6.1.4. In exigent circumstances to defend the member or others from physical injury when other, more discriminate methods of applying force are not feasible and uninvolved parties are unlikely to be subjected to the use of force.

Page 3 – DECLARATION OF FRANZ SCHOENING

> 6.4.6.2. Restricted Use.
>
> 6.4.6.2.1. Members shall not use RCAs or area impact munitions on a crowd engaged in passive resistance that does not impede a lawful objective.
>
> 6.4.6.2.2. Members shall not deploy RCAs or area impact munitions to disperse a crowd when avenues of escape are unavailable to the crowd.

10. Directive 635.10 provides: "A civil disturbance is defined as an unlawful assembly that constitutes a clear and present danger of riot, disorder, interference with traffic upon the public streets or when another immediate threat to public safety, peace or order appears." (635.10 Definitions). Similarly, Directive 635.10 provides: "When the crowd has been ordered to disperse and does not heed repeated warnings, and no reasonable alternative is apparent, riot control agents (RCAs) and/or special impact munitions may be deployed to prevent violence, injury or property damage and to avoid a greater application of force." (Directive 635.10, ¶ 9.2). Moreover, "These weapons [RCAs] shall only be used at the direction of the CMIC and when avenues of escape (i.e., clear path or route) are available to the crowd. Pursuant to this policy and Directive 1010.00, Use of Force, members must issue warnings prior to deployment." (*Id.* ¶ 9.2.1).

11. Beginning on May 28, 2020, thousands of Portlanders have joined with millions around the country to protest the injustice of police brutality, highlighted by the murder of George Floyd by a Minneapolis police officer. These protests are protected First Amendment expression. Though much of the demonstrations have remained peaceful and required zero police involvement, there has been a small group of demonstrators who have behaved very differently from the majority of peaceful demonstrators.

12. RRT has been deployed beginning on May 28, 2020 to the date of this declaration on a nightly basis to ensure a peaceful expression of the demonstrators First Amendment rights. Unfortunately, I have personally observed what have started as peaceful demonstrations turn into groups of persons engaging in criminal acts, including rioting, disorder, and other immediate threats to public safety, peace and order. Members of this group of demonstrators do not appear interested in advocating for systemic change but instead appear to want to fight with the police

Page 4 – DECLARATION OF FRANZ SCHOENING

and destroy property, City infrastructure and buildings. These activities are not protected by the First Amendment and myself and every PPB officer has sworn an oath to protect our community from such activity.

13. Late on May 29, 2020 and into the early morning hours of May 30, 2020, following the first night of largely peaceful protests, a group of persons engaged in rioting and looting. In downtown, windows were broken, fires were started, cars were burned, and buildings were graffitied. One of the focal points of conflict between the PPB and the protesters has been the area around the Justice Center in downtown Portland. Around 23:00 persons attacked the Justice Center smashing windows and doors, entered the building smashed office equipment, and started fires.

14. Pursuant to Directive 635.10 and Directive 1010.00, the IC declared the demonstration an unlawful assembly and after repeated warnings from the PPB sound truck for the crowd to disperse or they would be subject to the use of riot control agents or impact munitions, I ordered RRT grenadiers and sergeants to deploy riot control agents to disperse the unlawful assembly. This included the use of CS Gas.

15. RRT has been deployed to the Justice Center nightly to maintain order and to protect against similar threats to public safety. On these following nights, after a period of peaceful demonstration, groups of people have engaged in violent activity towards the police and non-police or engaged in significant destruction of property. RRT members have been subjected to having projectiles thrown and launched towards them from slingshots. These projectiles have included bricks, full cans of soup, frozen water bottles, full water bottles, rocks, steel sling shot balls, fireworks, bottles, beer cans, flares and many other items.

16. In the nights following the May 29, 2020 demonstration, the IC has authorized the use of riot control agents to disperse smaller groups who engaged in violent activity towards persons (police and non-police) or significant destruction of property. RRT only has deployed riot control agents as authorized under Directives 635.10 and 1010.00. RRT has only deployed

Page 5 – DECLARATION OF FRANZ SCHOENING

riot control agents after the IC has declared the demonstration an unlawful assembly and the demonstrators have been given multiple warning to leave the area and warned that failure to do so will result in the use of riot control agents and impact munitions against them. In addition, when demonstrators were told to leave and warned they had a clear path or route to leave the area, prior to any deployment of riot control agents. RRT has deployed smoke but did not use any CS gas on June 6 and June 7, 2020.

17. Thirty (30) PPB members have been injured during crowd control duties including an officer being hit and burned by a flare, and another being hit by a full beer can.

18. Riot control agents such as CS gas provide RRT with a valuable area denial tool that can be deployed from a distance. This minimizes the risk of injury to both demonstrators and PPB members. Without riot controls agents such as CS gas, RRT's ability to disperse an unlawful assembly would require physical force and would likely result in person to person contact which has a much higher potential for injury.

**I hereby declare that the above statement is true to the best of my knowledge and belief, and that I understand it is made for use as evidence in court and is subject to penalty for perjury.**

DATED: June 8TH, 2020

Page 6 – DECLARATION OF FRANZ SCHOENING