IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DON'T SHOOT PORTLAND, a nonprofit corporation, in its individual capacity; NICHOLAS J. ROBERTS, in an individual capacity and on behalf of themselves and all others similarly situated; and MICHELLE "MISHA" BELDEN, in an individual capacity and on behalf of themselves and all others similarly situated,<br><br>            Plaintiffs,<br>   v.<br><br>CITY OF PORTLAND,<br><br>            Defendant. | No. 3:20-cv-00917-HZ<br><br>ORDER |

HERNÁNDEZ, District Judge:

      Plaintiffs Don't Shoot Portland, Nicholas Roberts, and Michelle "Misha" Belden, on behalf of themselves and all others similarly situated, bring this action against Defendant City of Portland. Compl. 1, ECF 1. Plaintiffs allege that Defendant, through the Portland Police Bureau,

1 - ORDER

violated the First and Fourth Amendments by using oleoresin capsicum ("OC") and orthochlorobenzalmalonitrile ("CS") (collectively, "tear gas") during recent and ongoing Portland protests. Plaintiffs also filed a Motion for a Temporary Restraining Order ("TRO"), asking this Court to prohibit the City of Portland from using tear gas as a crowd control measure. Pl. Mot. TRO ("Pl. Mot."), ECF 2. For the reasons that follow, Plaintiffs' motion is granted in part.

## BACKGROUND

On May 29, 2020, citizens of Portland, Oregon, joined nationwide protests against the death of George Floyd and other acts of violence perpetrated by police officers against the African American community. While many demonstrations have remained peaceful, violence and destruction have occurred. Plaintiffs in this case challenge the Portland Police Bureau ("PPB")'s use of tear gas against protestors participating in these demonstrations.

The Court has reviewed the declarations and video evidence submitted by the parties. Defendant highlights the destruction that occurred on the first night of demonstrations, including a fire instigated by protestors inside the Justice Center.[1] Reese Decl. ¶ 6. Defendant also offers evidence of largely peaceful marches—without any police intervention—and of officers using tear gas in response to individuals shaking fences and throwing projectiles. *See* Sheffield Decl. Plaintiffs do not dispute that, in some instances, officers deployed tear gas after individuals, within a larger crowd of peaceful protesters, threw water bottles and fireworks. Wilbanks Decl.

---

[1] According to Defendant, "[t]he Justice Center houses the Multnomah County Detention Center. The Multnomah County Detention Center serves as the initial booking facility for all arrestees in Multnomah County and houses adults in custody for the County, as well as state and federal inmates involved in court matters . . . . As of May 29th, the Justice Center held approximately 250 adults in custody." Def. Resp. 4, ECF 17.

2 - ORDER

¶ 8; Kruszewski Decl. ¶ 9; Khalsa Decl. ¶ 13.[2] But they also offer evidence that, in certain incidents, officers fired cannisters of tear gas at protestors without warning or provocation both in front of the Justice Center and elsewhere in downtown Portland. *See, e.g.*, Roberts Decl. ¶¶ 14–15, 22–23; Bezdek Decl. ¶¶ 11, 23, 24; Theus Decl. ¶ 9; Butera-Smith Decl. ¶¶ 8, 9; Rushton Decl. ¶¶ 10, 11. Plaintiffs also recount multiple occasions in which crowds were surrounded by tear gas without available avenues of escape. Roberts Decl. ¶ 15; Theus Decl. ¶ 11; Bezdek Decl. ¶ 23; Butera-Smith ¶¶ 14, 15. Tear gas was also fired at protesters attempting to comply with officers' orders to leave the areas at issue. Wilbanks Decl. ¶¶ 14, 15; Bezdek Decl. ¶¶ 20, 23.

Defendant's use of tear gas is governed by two internal policy directives: Directive 635.10, "Crowd Management/Crowd Control,"[3] and Directive 1010.00, "Use of Force."[4] Additionally, on June 6, 2020, Mayor Ted Wheeler, as Commissioner of the Portland Police Bureau, imposed further limitations on the use of tear gas, directing that "gas should not be used unless there is a serious and immediate threat to life safety, and there is no other viable alternative for dispersal." Dobson Decl. ¶ 13.

## STANDARDS

The standard for a temporary restraining order (TRO) is "essentially identical" to the standard for a preliminary injunction. *Chandler v. Williams*, No. CV 08-962-ST, 2010 WL 3394675, at *1 (D. Or. Aug. 26, 2010) (citing *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brushy & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001)); *see also Daritech, Inc. v. Ward*, No. CV–11-570–BR, 2011 WL 2150137, at * 1 (D. Or. May 26, 2011) (applying preliminary injunction standard

---

[2] Defendant also asserts that officers have been targeted with other projectiles, including "bricks, full cans of soup, frozen water bottles, full water bottles, rocks, steel sling shot balls, fireworks, bottles, beer cans, flares and many other items." Schoening Decl. ¶ 15.
[3] Directive 635.10 is available at: https://www.portlandoregon.gov/police/article/649358.
[4] Directive 1010.00 is available at: https://www.portlandoregon.gov/police/article/751998.

3 - ORDER

to motion for TRO). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008)). "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Similarly, serious questions going to the merits, coupled with a balance of equities that tips sharply in a plaintiff's favor, will support the issuance of an injunction if the other elements of the test are met. *Id.* at 1134–35 (internal citations omitted).

## DISCUSSION

Before turning to the TRO analysis, there are four points worth addressing. First, as Judge Jackson noted in resolving a similar motion just days ago in the District of Colorado, people have a right to demonstrate and protest the actions of governmental officials, including police officers, without fear for their safety. This right is enshrined in the First and Fourth Amendments of the Constitution. Second, police in this country have difficult, dangerous, and often traumatic jobs. As the Supreme Court has recognized, officers are often "forced to make split-second judgments [] in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Third, this case arises in unprecedented times. COVID-19 is a highly contagious and deadly respiratory virus that has taken too many lives and upended communities throughout this country. Finally, like Judge Jackson, the Court recognizes the difficulty in drawing an enforceable line that permits police officers to use appropriate means

4 - ORDER

to respond to violence and destruction of property without crossing the line into chilling free speech and abusing those who wish to exercise it.

I.   **Likelihood of Success on the Merits**

   **A. Fourth Amendment Claim**

The Fourth Amendment prohibits unreasonable searches and seizures. Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham*, 490 U.S. at 395. The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions. *Id*. at 396–97. The Fourth Amendment standard requires inquiry into the factual circumstances of every case. *Id.* Relevant factors include the severity of the crime, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest. *Id.*

Here, Plaintiffs provide video evidence and declarations documenting the use of tear gas against protestors. While Defendant points to the destruction that occurred at the Justice Center on May 29, 2020, Plaintiffs offer evidence that tear gas was used indiscriminately in other instances throughout the city. In some of these instances, there is no evidence of any provocation. In others, individuals appear to have shaken fences and thrown water bottles and fireworks at the police. Either way, there is no dispute that *Plaintiffs* engaged only in peaceful and non-destructive protest. There is no record of criminal activity on the part of Plaintiffs. To the contrary, there is even evidence that some protesters were confronted with tear gas while trying to follow police orders and leave the demonstrations. Given the effects of tear gas, and the potential deadly harm posed by the spread of COVID-19, Plaintiffs have established a strong likelihood that Defendant engaged in excessive force contrary to the Fourth Amendment.

### B. First Amendment Claim

The First Amendment provides that all citizens have a right to hold and express their personal political beliefs. *See Cohen v. California*, 403 U.S. 15, 23–24 (1971). Organized political protest is a form of "classically political speech." *Boos v. Barry*, 485 U.S. 312, 318 (1988). "Activities such as demonstrations, protest marches, and picketing are clearly protected by the First Amendment." *Collins v. Jordan*, 110 F.3d 1363, 1371 (9th Cir. 1996). However, "[i]n order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alterations in the original) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994).

There is a serious question as to whether Plaintiffs will succeed on their First Amendment claim. At this juncture, the parties' sole dispute is whether Plaintiffs can demonstrate that their protected activity was a substantial or motivating factor in PPB's conduct. Plaintiffs have submitted evidence demonstrating that officers indiscriminately used force against peaceful protestors on multiple occasions. On a few occasions, officers continued to fire tear gas canisters as people attempted to leave the protest area, effectively blocking their escape. One protestor was subjected to rubber bullets, tear gas, and a flash bang at close range as he was calmly walking towards the waterfront, trying to comply with officers' orders. Another was confronted by a group of seven officers, who rolled tear gas down the street towards her even as she informed the officers she was trying to go home. These incidents demonstrate that preventing criminal activity near the Justice Center was not the sole purpose of PPB's use of force. Instead, officers may

6 - ORDER

have been substantially motivated by an intent to interfere with Plaintiffs' constitutionally protected expression.

## II.    Irreparable Harm

Plaintiffs must also "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22. "Typically, monetary harm does not constitute irreparable harm." *Calif. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009), *vacated and remanded sub nom. Douglas v. Indep. Living Ctr. of S. Calif., Inc.,* 565 U.S. 606 (2012). The deprivation of a constitutional right, however, may constitute irreparable injury. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (affirming the district court's finding that, in the absence of an injunction, the plaintiffs faced irreparable harm where it was likely they would be unlawfully detained in violation of the Fourth Amendment); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). *But see City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (holding that the plaintiff was not entitled to an injunction without a showing of any "real or immediate threat that the plaintiff will be wronged again").

Plaintiffs have demonstrated a threat of immediate, irreparable harm in the absence of a TRO. Plaintiffs have shown a likelihood of success on the merits on their Fourth Amendment claim and at least a serious question as to whether they have been deprived of their First Amendment rights. There is a real and immediate threat that Plaintiffs will be deprived of these rights as protests continue. The declarations in this case show that PPB has regularly used tear gas to disperse peaceful protestors. It is likely that it will continue to do so. The risk of irreparable harm is further heightened by the context in which these protests are occurring. Despite the global coronavirus pandemic, Plaintiffs and other protestors throughout the

country—frequently wearing protective face coverings—have taken to the streets to protest police brutality and systemic injustice after the killing of George Floyd. But the use of tear gas under these circumstances may put protestors' health at risk, contributing to the increased, widespread infection of this lethal virus. Without a court order limiting the circumstances in which PPB may use tear gas, Plaintiffs are likely to suffer irreparable physical and constitutional injuries.

### III.    Balance of Equities

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (internal quotation marks omitted). Defendant points to harm that includes "the breaking of the windows of the Justice Center and other buildings, setting off fireworks, property destruction, looting, setting fires in the Justice Center and other areas of downtown, throwing and launching deadly projectiles at the police, and attempting to dismantle a fence put up to protect the Justice Center." Def. Resp. 22.

In theory, limits on the use of tear gas may impede officers' ability to protect themselves against potential violence from demonstrators. But any harm in limiting Defendant's use of tear gas is outweighed by the irreparable harm that Plaintiffs—engaged in peaceful protest—are likely to endure. The relief afforded limits but does not eliminate the use of tear gas. Accordingly, the balance of equities weighs in Plaintiffs' favor.

### IV.    Public Interest

"The public interest inquiry primarily addresses impact on non-parties rather than parties." League of Wilderness Defs/Blue Mountains Biodiversity Project v. Connaughton, 752 F.3d 755, 766 (9th Cir. 2014) (internal quotation marks omitted). The Ninth Circuit has found

8 - ORDER

that "it is always in the public interest to prevent the violation of a party's constitutional rights."

*Melendres*, 695 F.3d at 1002 (internal citations and quotations omitted); *see also Cuviello v. City of Vallejo*, 944 F.3d 816, 834 (9th Cir. 2019) ("We have consistently recognized the significant public interest in upholding free speech principles." (internal quotations and brackets omitted)).

This is a significant moment in time. The public has an enormous interest in the rights of peaceful protesters to assemble and express themselves. These rights are critical to our democracy. The community, however, also has an interest in allowing the police to do their jobs and to protect lives as well as property.

Here, there is evidence that officers have violated the constitutional rights of peaceful protestors, as well as their own department's internal directives and guidelines. Limiting the use of tear gas may mean that officers are unable to stop some property damage. But the unconstrained use of tear gas cannot weigh in the public's interest when this use is likely to exacerbate the transmission of COVID-19, for those engaged in peaceful protest as well as the community at large. The Court therefore finds that the public interest weighs in favor of granting a TRO in this case.

**V.     Relief**

While the Court acknowledges that Mayor Wheeler has issued additional guidance on the use of tear gas during these protests, Defendant has not submitted sufficient evidence to show that this guidance will be effective in preventing its use against peaceful protestors in violation of the First and Fourth Amendment. The Court also notes that a court order offers Plaintiffs additional recourse in the event that these violations continue. The Court therefore orders that PPB be restricted from using tear gas or its equivalent except as provided by its own rules generally. In addition, tear gas use shall be limited to situations in which the lives or safety of the

9 - ORDER

public or the police are at risk. This includes the lives and safety of those housed at the Justice Center. Tear gas shall not be used to disperse crowds where there is no or little risk of injury.

This order will expire in 14 days unless extended, superseded, or vacated by a subsequent order. Plaintiffs are not required to post security.

## CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order [2] is granted in part.

IT IS SO ORDERED.

Dated: _____June 9, 2020_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

10 - ORDER