JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON
B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214
Telephone: (503) 988-3138
Facsimile: (503) 988-3377
Email: andy.jones@multco.us
    *Of Attorneys for Defendant Multnomah County*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

| | |
|---|---|
| DON'T SHOOT PORTLAND, NICHOLAS ROBERTS, MICHELLE BELDEN, ALEXANDRA JOHNSON, <br><br>                    Plaintiff, <br><br>    v. <br><br> CITY OF PORTLAND and MULTNOMAH COUNTY, <br><br>                    Defendants. | Civil No. 3:20-cv-00917-HZ <br><br><br> DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION |

DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I.   STATEMENT OF MATERIAL FACTS ............................................................... 2

    A.   The Protests Following the Death of George Floyd ................................. 3
    B.   The COVID-19 Pandemic..................................................................... 4
    C.   The Justice Center................................................................................ 7
    D.   The May 29th, 2020 Attack on the Justice Center................................. 8
    E.   Multnomah County's Response To the May 29th, 2020 Attack ............. 9
    F.   Nightly Threatening and Violent Behavior Around The Justice Center.............. 10

II.  STANDARD GOVERNING PRELIMINARY INJUNCTION ....................................... 13

III. SUMMARY OF RELIEF SOUGHT ................................................................. 14

IV.  POINTS AND AUTHORITES ....................................................................... 15

    A.   Oregon House Bill 4208 Now Governs Defendants' Use of Tear Gas ............... 15
    B.   Plaintiffs Have Not Raised Serious Questions Or Demonstrated a Likelihood of Success On a First Amendment Retaliation Claim Against Multnomah County . 16
    C.   Plaintiffs Have Not Made The Requisite Serious Question or Likelihood Showing On the Fourth Amendment Claim Against Multnomah County.......................... 19
    D.   Plaintiffs Have Not Shown A Likelihood of Irreperable Harm from Multnomah County Absent Injunctive Relief ....................................................... 21
    E.   The Impact Of Plaintiff's Proposed Injuction on  the Public Would Be Substantial, and the Balancing of the Equities Weighs in Multnomah County's Favor. ................................................................................... 23
    F.   Plaintiffs' Proposed Injunction As Worded Is Impermissibly Vague. ................. 24

V.   CONCLUSION ........................................................................................ 25

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

Defendant Multnomah County[1] respectfully offers the following Response to Plaintiffs' Motion for Preliminary Injunction.  First, this Response is intended to give the Court additional record evidence.  Second, though Plaintiffs' motion is directed towards Co-defendant City of Portland, Multnomah County respectfully submits the record does not support applying the injunctive relief Plaintiff seeks against Multnomah County.

Plaintiffs' lawsuit and motion seek broad relief involving crucial questions of law and of fact that change by the day.  Multnomah County is responding each night to threatening, destructive, and violent behavior from individuals focusing on the Justice Center, and at times County deputies need to use responsive, reasonable, and proportionate force, based on the totality of the circumstances, to respond to threatening, resistive, or criminal behavior and to preserve life and safety of those in and around the Justice Center.   Multnomah County respectfully submits that this record not support applying the preliminary injunction that Plaintiffs seek against Multnomah County.

## I.    STATEMENT OF MATERIAL FACTS

As this Court recognizes "[t]his is a significant moment in time."  ECF, Docket 29.  New challenges to public health and safety and to individual civil liberties present themselves each day.  Individual citizens like Plaintiffs, local governments charged with public health and safety like the Defendants, and judicial bodies like this Court are seeking workable solutions that vindicate the interests of individuals and society as a whole.

/// /// ///

/// /// ///

---

[1] The County was served with the Second Amended Complaint on June 26th, 2020 and has not been a party for Plaintiffs' prior motions seeking relief against Defendant City of Portland.

Page 2 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
              PRELIMINARY INJUNCTION

A.     The Protests Following the Death of George Floyd

For more than five weeks, the streets of Portland have been filled following the death of George Floyd.  ECF 29, p. 2.[2]  The scale is unprecedented, exemplified by thousands of peaceful protestors lying on the Burnside Bridge in remembrance of Mr. Floyd and protesting police violence against people of color.[3]  Peaceful protests have continued throughout Portland and statewide since Mr. Floyd's death,[4][5] "many" of which are peaceful.  ECF 29, p. 2.

From Plaintiffs' perspective, the area around the Multnomah County Justice Center serves as a "symbolic target for demonstration" and a "focal point for conflict."  ECF 2, p. 10. For more than a month, individuals have coopted the First Amendment expression of peaceful protestors to engage in violent, tumultuous, damaging behavior that breaches the peace and threatens lives and safety, including those in and around the Justice Center. Supplemental Reese Declaration, ¶3.   As referenced in Plaintiffs' motion, individuals are now targeting other areas like the PPB North Precinct, damaging property and threatening the lives and safety of staff, civilians, and officers alike.[6]

Plaintiffs suggest any Response will "seek to cast the entire Portland activist movement in the same light."  ECF 45, p. 22.  This is not true.  Multnomah County remains committed to

[2] *The Oregonian*, May 28, 2020 "Portland Police Respond to George Floyd's In-Custody Death in Minneapolis, Prepare for Local Protests."  https://www.oregonlive.com/portland/2020/05/portland-naacp-to-convene-downtown-demonstration-in-wake-of-george-floyds-in-custody-death.html
[3] *The Oregonian*, June 23rd, 2020 "'The World Needs to See This' – The Story Behind the Iconic Photo Of the Burnside Bridge Protest in Portland."  https://www.oregonlive.com/news/2020/06/the-world-needs-to-see-this-the-story-behind-the-iconic-photo-of-the-burnside-bridge-protest-in-portland.html
[4] "Kids Organize March For George Floyd, March Through Northeast Portland on Day 15 of Protests" https://www.kptv.com/news/kids-organize-march-for-george-floyd-march-through-ne-portland-in-day-15-of-protests/article_4ab5ef96-ac68-11ea-9d3e-bbec6096ad52.html
[5] *The Oregonian*, June 13, 2020 "Portland Protests Against Police Violence Continue Saturday, Including Marches, Rallies Throughout Metro Area."  https://www.oregonlive.com/portland/2020/06/portland-protests-against-police-violence-continue-saturday-including-marches-rallies-throughout-metro-area.html
[6] *The Oregonian*, July 1, 2020, "Portland Protests Continue for 34th Straight Day Tuesday" https://www.oregonlive.com/portland/2020/06/portland-protests-to-continue-for-34th-straight-day-tuesday.html

Page 3 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
            PRELIMINARY INJUNCTION

the rights of individuals to peacefully protest on issues of race and policing.  Supplemental Reese Declaration, ¶¶2, 6-9.  Sheriff Michael Reese continues to meet with protestors and listen, encouraging ongoing dialogue on these issues,[7] and has participated in demonstrations and marched in support of meaningful and lasting systemic change to combat racism in our society. *Id.*

Indeed, Oregon has given legislative attention to making these changes since this Court's Order.  Citing the efforts of "countless protestors," our state legislature has passed a number of bills directed towards issues raised by protestors.  See HB 4201 establishing a Joint Committee on Transparent Policing and Use of Force Review, HB 4205 compelling intervention and reporting by police officers witnessing misconduct, HB 4208 prohibiting "tear gas" for crowd control except in circumstances constituting a riot, and SB 1604 pertaining to collectively bargaining discipline terms for law enforcement personnel.

**B.    The COVID-19 Pandemic**

At this same time, we face rapidly escalating societal disruption caused by the novel COVID-19 virus.  On March 8, 2020, Oregon had 14 presumptive cases and the national death toll from COVID-19 stood at 3,468.  See *Elkhorn Baptist Church et al v. Brown*, 366 Or 509, 512, - - P.3d - - (2020), Executive Order (EO) 20-03.  Three months later when Plaintiffs filed this action, Oregon had leapt to 4,000 cases[8] and "at least 100,000 Americans [had] died from the virus."  (ECF 2, p 28).  The Center for Disease Control estimates 30,000 more Americans

---

[7] KATU "Portland Protestors, Oregon Elected Leaders meet to Talk Lasting Change"
https://katu.com/news/local/elected-officials-law-enforcement-meet-with-portland-demonstrators
[8] Oregon Health Authority Coronavirus Update, June 2, 2020.
https://content.govdelivery.com/accounts/ORDHS/bulletins/28ebcd8

Page 4 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
            PRELIMINARY INJUNCTION

have died since Plaintiff filed this suit, with a staggering 2,841,906 people infected nationwide.[9][10]  Our state is today approaching 9,000 cases, climbing by hundreds each day.[11]

Opinions of medical and public health professionals are evolving rapidly.  In March, officials advised against widespread mask use;[12] the CDC[13] now strongly advises masks and Oregon requires masks in all public spaces.[14] Oregon Health Authority expressed initial concerns about large protest gatherings causing a spike;[15] it has since opined our recent spike was not necessarily linked to ongoing protests.[16]

While outdoor gatherings are thought to produce lower risk, the realities of risk and severity of impact has necessitated drastic closures across the country of public outdoor spaces, and opinions as to risk enhancement and transmission rate(s) remain speculative and subject to change, requiring updated recommendations on safety, exposure, and rates of transmission.

There have been overwhelming societal costs associated with preserving public health. Governor Brown has issued over twenty executive orders that, among other things, prohibit large gatherings, close schools and places of worship, close restaurants and bars and most workplaces,

---

[9] Daily numbers are available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html
[10] See also *Johns Hopkins University COVID-19 Dashboard*, https://coronavirus.jhu.edu/map.html, as cited in *Elkhorn Baptist Church et. al. v. Kate Brown*, 366 Or. 506, 515, - - P.3d - - (2020)
[11] Oregon Health Authority's COVID-19 Dashboard, https://public.tableau.com/profile/oregon.health.authority.covid.19#!/vizhome/OregonCOVID-19PublicHealthIndicators/COVID-19Burden
[12] Center for Disease Control, "How to Protect Yourself" COVID-19 Guidelines, March 31, 2020 https://web.archive.org/web/20200331143006/https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html
[13]"Considerations for Wearing Cloth Face Coverings https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html
[14]Oregon Health Authority, Statewide Mask, Face Shield, Face Covering Guidance, June 30, 2020 https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le2288K.pdf
[15] Oregon Public Broadcasting "Protests Force Leaders to Weigh Coronavirus Spread," June 2nd, 2020 (https://www.opb.org/news/article/oregon-portland-spike-coronavirus-right-to-gather/)
[16] Oregon Public Broadcasting "Black Lives Matter Not a Big Factor in Oregon's COVID-19 Spike," June 26th, 2020.  https://www.opb.org/news/article/oregon-portland-spike-coronavirus-right-to-gather/

Page 5 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
                PRELIMINARY INJUNCTION

ban evictions, and postpone nonemergency medical care.  *Elkhorn Baptist*, 566 Or at 514.

Executive Order 20-12, ordering Oregonians to "Stay at Home, Save Lives" made knowing

violation of the order a Class C Misdemeanor.  *Executive Order 20-12*, Section 23-24, ORS

401.990.

It is against this backdrop – a long overdue social justice movement taking place during a

once in a century pandemic – that the Court considers Plaintiffs' claims.  Though First

Amendment rights are well-recognized and vital, large-scale protests during a global pandemic

carry risks in tension with the Governor's Executive Orders directed at public health.

 As the City's prior submissions make clear, law enforcement has not stopped or

interfered with peaceful protests despite the Executive Order's penalties.  ECF 19, ¶¶11-22.

Further, while Portland police have prioritized immediate life and safety risks over property

damage, individual business owners in Portland, already reeling from the loss of business caused

by the pandemic, have sustained significant property damage in the past month, and publically

are expressing frustration with perceived failure of law enforcement to stop this damage.[17]

Neither the public health and safety interests nor individual interests are absolute;

circumstances dictate revisiting as facts and law change rapidly. This Court has recognized these

tensions, pointing out the "enormous interest in the rights of peaceful protestors to assemble" as

well as the "community…interest in allowing police to do their jobs and to protect lives as well

as property."  (ECF 29, page 9).  These tensions are inevitable, as courts "are mindful that the

---

[17] The Oregonian, "Downtown Retailers Still Reeling From Fiery Riot and City's Meek Response: 'It Was Chaos'"
June 27th, 2020. https://www.oregonlive.com/business/2020/06/downtown-retailers-wonder-about-police-reaction-to-rioting-thieves-where-was-the-mayor.html

Page 6 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
        PRELIMINARY INJUNCTION

preservation of liberty depends in part upon the maintenance of social order. *City of Houston,*

*Tex. V. Hill.*  482 U.S. 451, 471-472, 107 S.Ct 2502, 2515, 96 L.Ed 2d 398 (1987).

 In this unprecedented time, executive, legislative, and judicial action involve fundamental

questions of the nature of our societal compact, namely the collective benefit of health, safety,

and welfare of the many versus the individual liberties we all hold as inviolable. *Elkhorn*

*Baptist*, 366 Or. at 506, *South Bay United Pentecostal Church v. Newsom*, No 19A1044, 590

U.S. __, __ S.Ct __, __ L Ed 2d __, 2020 WL 2813056 at *1 (May 29, 2020) (Roberts, C.J.,

concurring)(quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38, 25 S.Ct 358, 49 L.Ed 643

(1905).

### C. The Justice Center

 Multnomah County owns the Justice Center and Sheriff Reese and his deputies oversee

day to day operations of the facility.  ECF 21, ¶2, ¶4.  The Justice Center is the home to various

partners in the justice system in addition to the Sheriff's Office.  Supplemental Declaration of

Michael Reese, ¶4.  It houses the Multnomah County Detention Center ("MCDC"), a maximum

security jail facility that the Sheriff operates as part of his elected duties.  ECF 21, ¶¶2, 4, ORS

206.090.  MCDC is the booking facility for all arrestees within Multnomah County, houses

adults in custody pending trial, houses inmates sentenced to a term of confinement by Oregon

courts, and houses federal inmates on pending charges in this Court pursuant to an agreement

with the United States Marshals' service.  ECF 21, ¶¶2, 4.

 In addition to jail operations, the Justice Center houses the Portland Police Bureau's

Central Precinct.  Supplemental Reese Declaration, ¶4.  The Justice Center houses County

administrative offices for records staff and for County Department of Community Justice

personnel.  *Id.* The Justice Center houses the Multnomah County Corrections Health ("MCCH")

Page 7 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
   PRELIMINARY INJUNCTION

staff who provide medical care to the inmates living in MCDC and Multnomah County Inverness Jail ("MCIJ").  *Id.*  The Justice Center also houses four courtrooms used by the State of Oregon Judicial Department to process initial appearances and other hearings as necessary.  *Id*.  In sum, the Justice Center's safe continued operation is vital to multiple agencies beyond the Sheriff's Office, and to many people who reside and work in the facility.  *Id.*

### D.    The May 29th, 2020 Attack on the Justice Center

Throughout May 28th and May 29th, 2020, protestors peaceably assembled throughout the day across Portland to express their outrage at the death of Mr. Floyd, including daytime rallies at Terry Schrunk Plaza and a large vigil at Peninsula Park in North Portland.[18][19]  The early evening of May 29th, 2020 was uneventful at the Justice Center, with approximately seventy (70) people working in various capacities including Multnomah County deputies, Heath Department medical staff, DCJ release officers, and civilian records staff.  ECF 21, ¶5.

The Official Twitter account of the Portland Police Bureau that evening provides context, describing a deterioration from peaceful protest to violent, destructive, and tumultuous in less than an hour:

> At 10:58 p.m.: "The demonstration is now downtown.  If you are in the demonstration with children, you are advised to leave."[20]
>
> At 11:03 p.m.: "There has been significant vandalism and a shooting connected to this protest. People need to go home. This

---

[18] *The Oregonian*, "Portland NAACP Hosts Downtown Demonstration in Wake of George Floyd's In-Custody Death," May 29, 2020, https://www.oregonlive.com/portland/2020/05/portland-naacp-to-convene-downtown-demonstration-in-wake-of-george-floyds-in-custody-death.html
[19] *Willamette Week*, "Portland Commissioner Joanne Hardesty Responds to the Death of George Floyd: 'This is The Reality of Being Black in America,'" May 29th, 2020, https://www.wweek.com/news/city/2020/05/29/portland-commissioner-jo-ann-hardesty-responds-to-the-death-of-george-floyd-this-is-the-reality-of-being-black-in-america/
[20] https://twitter.com/PortlandPolice/status/1266609867822739456

Page 8 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
            PRELIMINARY INJUNCTION

event has been declared an unlawful assembly. If you do not go home now, force will be used to disperse you.[21]

At 11:13 p.m.: "The Justice Center has been attacked and a fire has been lit inside. @pdxfire is on scene."[22]

At 11:49 p.m.: "PPB has declared a riot. @pdxfire is putting out fires in the downtown area. Everyone needs to leave the downtown area immediately or they are subject to force."[23]

As referenced above, at around 11:00 p.m. demonstrators began smashing windows around the Justice Center and vandalizing the building. ECF 29, ¶6, 7. Flares and other incendiary devices were thrown into a ground-level office where civilian records staff was working at the time, necessitating an immediate evacuation quickly evacuated to a secure location within the Justice Center. *Id.* Because of the extreme risk to the safety of the people inside the Justice Center, law enforcement personnel used force, including CS gas, to clear and secure the area. ECF 21, ¶¶7-8. Portland's Fire Chief described evening as "unrest unlike any I have experienced in a lifetime in this city."[24]

### E.    Multnomah County's Response to the May 29th, 2020 Attack

Multnomah County took stock of the significant damage to the Justice Center in the following days. Declaration of Mike Crank, ¶4. Owing to ongoing concerns about the security risks to people working and living inside the Justice Center, Portland Police erected temporary fencing surrounding areas of downtown, including the area around the Justice Center, and the County erected a second fence around the sidewalk around the Justice Center. Crank Declaration, ¶5, Declaration of Carey Kaer, ¶9. The Sheriff's Office also stationed its Rapid

---

[21] https://twitter.com/PortlandPolice/status/1266611192350400513?s=20
[22] https://twitter.com/PortlandPolice/status/1266613768479313921?s=20
[23] https://twitter.com/PortlandPolice/status/1266622765903122432?s=20

Page 9 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
　　　　　PRELIMINARY INJUNCTION

Response Team deputies at the Justice Center each night, their primary function is to prevent future incidents like the evening of May 29th, 2020 and keep the people in the building safe and secure. Kaer Declaration, ¶¶8-9. The Sheriff's Office has also had assistance from other agencies assisting the RRT as available including the Portland Police Bureau, officers from the Port of Portland, City of Gresham, and other agencies. *Id.*, ¶9

  **F. Nightly Threatening and Violent Behavior Around the Justice Center**

In late May and early June, demonstrations during the day remained largely peaceful, allowing protestors to talk with deputies and Portland Police officers alike. *Id.*, ¶¶10, 11. As the day ended and darkness fell, MCSO staff observed marked changes in the crowd. *Id.*, ¶12.

Each evening individuals, using the crowd as cover, would throw projectiles over the fence towards the building and towards uniformed officers. Kaer Declaration, ¶12. Plaintiffs' submissions minimize the scope and severity of projectiles. See ECF 4, ¶17, ECF 12, ¶8, ECF ¶11. Individuals routinely threw rocks, bricks, cans, bottles, as well as occasional incendiary devices and fireworks. Kaer Declaration, ¶¶ 13. These actions created serious risks to the safety of the MCSO deputies stationed outside the Justice Center, in particular a June 7th, 2020 improvised explosive device that injured deputies, along with nightly fireworks that carry additional risks of fire or injury. *Id.* ¶¶13-15.

People would also routinely try to break down portions of the security fencing or break through the fencing to get towards the Justice Center. *Id.*, ¶16, Crank Declaration, ¶¶5, 7, Ex 2. There would often be hundreds of people nearby, in the dark, wearing masks, and the total number of people out in the park greatly exceeded the number of law enforcement in the area of

---

[24] "An Open Message from Chief Boone to Portland Fire & Rescue Crews and Public Safety Teams"
https://www.portlandoregon.gov/fire/article/761765
Page 10 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
   PRELIMINARY INJUNCTION

the Justice Center.  *Id.*  Given the events of May 29th, 2020, the removal of any portions of the barriers created a serious concern that MCSO and other law enforcement agencies would not be able to stop a coordinated attack by a large group of people on the Justice Center.  *Id.*

Whenever possible, PPB would make announcements over loudspeakers to the crowd to stay back from the fence and to stop throwing projectiles over the fence, and importantly would inform people that less lethal force options would be used to stop these threatening actions. Kaer Declaration, ¶17, See also ECF 18, ¶16.  During this period between May 31st and June 15th, 2020, MCSO RRT team members and PPB members used force, including CS gas canisters inside the fence area and less lethal impact rounds, to stop specific people or groups of people from these threating action.  *Id.*

This Court issued its Order restraining the Portland Police Bureau's use of tear gas, though noting its Order did not enjoin PPB from using tear gas when the lives and safety of the public, the police, or those housed at the Justice Center are at risk.  ECF 29, pp. 9-10. Multnomah County deputies have not used CS gas at the Justice Center since that time.  *Id.*, ¶17. During this same time period, while dealing with nightly threats to his staff and the people in the Justice Center, Sheriff Reese continued his outreach to the citizens he serves and protects, to try to demonstrate the County's commitment to social change through dialogue and peaceful protest. Supplemental Reese Declaration, ¶¶ 7 – 10.

On June 15th, 2020, PPB took down the outer fence, and the County ultimately removed the inner fence, as people were breaking the fence down and removing it regularly.  Kaer Declaration, ¶¶18, Crank Declaration, ¶5.   Instead the County has enclosed the Justice Center's portico with plywood to protect windows and doors and to provide an additional barrier to restrict access and secure the people inside the building.  *Id.,* Crank Declaration, ¶6.

Page 11 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
           PRELIMINARY INJUNCTION

The nightly attacks on the Justice Center have not improved.  Kaer Declaration, ¶22.

Deputies are observing ongoing coordinated violent or disruptive efforts by an increasing

percentage of people around the Justice Center.  *Id.*, ¶¶20-22.  People are shining lasers at law

enforcement officers' eyes and cameras, spray painting or damaging cameras, as well as giving

cover to individuals trying to damage the barriers outside the Justice Center or seal entrances and

exits which creates serious safety concerns for quickly evacuating or accessing the building in an

emergency.  *Id.*, ¶21, Crank Declaration, ¶¶7-8., ECF 19, ¶¶24-25.

People are routinely setting fires and damaging property throughout downtown.  Kaer

Declaration, ¶22.  People routinely block off streets surrounding the Justice Center, eliminating

vehicular routes for first responders.   *Id.*.  People are now turning their attention towards the

United States District Court building, breaking windows and doors and drawing a force response

from federal agents.  *Id.*, ¶23.  Over the Fourth of July weekend, federal agents deployed less

lethal force including CS gas, against groups of individuals, and Multnomah County deputies

had commercial fireworks exploding at their feet while trying to clear crowds from the area.

Kaer Declaration, ¶23.

County Facilities and Management estimate the damages to the Justice Center and the

County Courthouse at several hundred thousand dollars, with damages ongoing every night.

Crank Declaration, ¶¶9-10. While not every such incident has resulted in force from law

enforcement, there has been a constant presence of threatening, violent, destructive behavior

from individuals in the area of the Justice Center for more than a month, with no end in sight and

no sign of improvement.  Kaer Declaration, ¶¶18-23.  Multnomah County has used force options

during that time to respond to specific, identifiable situations, to be documented and subject to

Page 12 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
              PRELIMINARY INJUNCTION

review by appropriate command staff as per Sheriff's Office policy. *Id.*, ¶25, Supplemental

Reese Declaration, ¶5.

## II.    STANDARD GOVERNING PRELIMINARY INJUNCTION

A preliminary injunction - "an extraordinary remedy that may only be awarded on a clear

showing that plaintiff is entitled to the relief sought" – requires the court consider Plaintiff's

likelihood of success on the merits, likelihood that the Plaintiff will suffer irreparable harm,

whether the balance of hardships favors the plaintiff, and whether the injunction serves the

public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct.

365, 172 L. Ed. 2d 249 (2008).  In this Circuit, a Court may also grant an injunction if "there is a

likelihood of irreparable injury to the plaintiff, there are serious questions on the merits, the

balance of hardships tips sharply in favor of the plaintiff, and the injunction is in the public

interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012).

In either case, Plaintiffs' likelihood of success or raising of serious questions weighs

against the relative hardships posed on each of the parties. *Taylor v. Westly*, 488 F.3d 1197, 1200

(9th Cir. 2007).   The court looks to "the competing claims of injury and must consider the effect

on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24, 129

S.Ct 365 (2008).  When the government is a party, the balance of hardships and the public

interest merge.  *Nken v. Holder*, 556 U.S. 418, 435-436, 129 S.Ct 1749 (2009).

This Court retains broad authority "to modify the terms" of a restraining order or

injunction "in the event that changed circumstances require it," as the Court gains additional

facts. *United States v. State of Oregon*, 769 F.2d 1410, 1416 (9th Cir. 1985), *A&M Records, Inc.*

*v. Napster*, 284 F.3d 1091, 1098 (9th Cir. 2002), see also *Sys. Fed No 91 v. Wright*, 364 U.S. 642,

647, 81 S.Ct 368 (1961)("[S]ound judicial discretion may call for the modification of the terms

Page 13 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
                 PRELIMINARY INJUNCTION

of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its

issuance, have changed.").

Fed. R. Civ. P. 65(d) requires any injunction be specific in its terms and describe in

reasonable detail the acts to be restrained, as "those against whom an injunction is drawn should

receive fair and precisely drawn notice of what the injunction actually prohibits." *Foryune v.*

*American Multi-Cinema, Inc.*, 364 F.3d 1075, 1086 (9th Cir. 2004)(quotations omitted). The rule

"was designed to prevent uncertainty and confusion on the part of those faced with injunctive

orders, and to avoid the possible founding of a contempt citation on a decree too vague to be

understood." *Foryune,* 364 F.3d at 1086, quoting *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct.

713, 38 L.Ed.2d 661 (1974).

Finally, each plaintiff seeking the remedy of injunctive relief must have standing to seek

that particular form of relief, as Article III standing is not "dispensed in gross;" *Friends of the*

*Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185, 120 S. Ct. 693, 706, 145 L.

Ed. 2d 610 (2000), citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d

675 (1983). Even in the early injunctive stage of the case, past exposure to allegedly

unconstitutional conduct does not, without more, demonstrate a present case or controversy for a

plaintiff seeking injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (quoting

*O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)).

## III.    SUMMARY OF RELIEF SOUGHT

Plaintiffs Don't Shoot Portland, Nicholas Roberts, Michelle Belden, and Alexandra

Johnson collectively allege violation of their Fourth Amendment rights to be free from

unreasonable seizure and their First Amendment right to freedom of speech and peaceably

Page 14 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION

assemble. (ECF, 38, ¶¶48, 54-56).  From these two alleged constitutional deprivations, Plaintiffs'

Second Amended Complaint seeks the following injunctive relief:

(1)       Prohibiting City of Portland and Multnomah County from using tear gas as a

crowd control measure;

(2)       A permanent injunction, prohibiting the City of Portland and Multnomah County

from using "less lethal" weapons, *including but not limited* to OC spray or munitions, impact

munitions, LRAD, sound cannons, *etc.,* against protestors who are only engaged in passive

resistance, including passive resistance to an order to disperse. In any case where PPB and

MCSO use less lethal weapons, they must insure (sic) that no person who is engaged in only

passive resistance is *impacted or effected* by those weapons (emphasis added);

Plaintiffs' Motion appears to seek a preliminary injunction as to only the second

category.

## IV.   POINTS AND AUTHORITES

### A.   Oregon House Bill 4208 Now Governs Defendants' Use of Tear Gas

Article III requires a live case or controversy, which does not exist when "the issues

presented in the case or controversy are no longer live or the parties lack a legally cognizable

interest." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).  One such instance is when a

state legislature amends or repeals a challenged statue, at which time any litigation as to the

subject matter no longer satisfies Article III.  *Board of Trustees of Glazing Health and Welfare

Trust v. Chamers*, 941 F.3d 1195, 1198 (9th Cir. 2019).

This Court's order on June 9th directed towards PPB's use of tear gas to situations

permitted by PPB's internal policies and "in situations where the lives or safety of the public or

police are at risk … includ[ing] the lives and safety of those housed at the Justice Center" and

Page 15 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
              PRELIMINARY INJUNCTION

"not … to disperse crowds when there is little to no risk of injury" and did not explicitly require warnings beforehand.  ECF 29, pp. 9-10.  Oregon House Bill 4208 goes substantially further, banning the use of tear gas in any situation not constituting a riot under Oregon law, also requiring prior warnings and time to disperse.

While this Court retains authority as to the matters before it, Multnomah County as a law enforcement agency is subject to Oregon's new state law enacted after June 9th, 2020, as is co-defendant City of Portland.  As such, state law provides Plaintiffs the protection sought as an injunction rather than an active case or controversy before the Court.

**B.      Plaintiffs Have Not Raised Serious Questions or Demonstrated a Likelihood of Success on a First Amendment Retaliation Claim Against Multnomah County.**

Plaintiffs must show the following to prevail against Multnomah County: "(1) a deprivation of their First Amendment rights; (2) Multnomah County had a policy; (3) Multnomah County's policy amounted to deliberate indifference to Plaintiffs' First Amendment rights; and (4) that the policy is the 'moving force behind the constitutional violation" to prevail on a claim against Multnomah County.  *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).  Plaintiffs' can show the final three elements by showing actions pursuant to formal written policy, pursuant to longstanding practice or custom having the force of policy, that the actor did so in their capacity as an official policymaker, or that an official policymaking defendant ratified an unconstitutional decision or action and bases for it. *Gilette v. Delmore*, 979 F.2d 1342, 1346-1347 (9th Cir. 1992), *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 737, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989), *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986), *City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988).

Page 16 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
               PRELIMINARY INJUNCTION

A plaintiff alleging retaliation must show the plaintiff was engaged in activity protected by the First Amendment, that the officer's conduct would chill a person of ordinary firmness from engaging in that activity, and a causal connection between the protected activity and the official action. *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300-1301 (9th Cir. 1999). Peace officers do not violate the First Amendment every time their actions may implicate speech. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019).

For retaliatory seizure claims, a plaintiff must demonstrate the officer was driven by "retaliatory animus" and that animus was the 'but-for' cause of the officer's actions. *Blair v. Bethel School District*, 608 F.3d 540, 543 (9th Cir. 2010), *Nieves*, 139 S. Ct at 1722, citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct 1695, 164 L.Ed.2d 441 (2006). The connection between alleged retaliatory animus and injury is weakened substantially - or severed entirely - in the face of a wholly legitimate reason for an officer's conduct. *Reichle v. Howards*, 566 U.S. 658, 668, 132 SCt 2088 (2012).

Plaintiffs' conduct must also be protected expressive conduct. The First Amendment protects expressive conduct, meaning a court must determine: " 1) "whether [a]n intent to convey a particularized message was present" and 2) "whether the likelihood was great that the message would be understood by those who viewed it." *Texas v. Johnson*, 491 U.S. 397, 404, 109 S.Ct 2533 (1989). Multnomah County deputies are using less lethal options to stop individuals from violent and threatening behavior like throwing projectiles at officers, breaching fences in place to keep the building from being broken into and overwhelmed, blocking or sealing shut entries and exits to the building, and other specific threats. Kaer Declaration, ¶¶12 – 23. This conduct is not protected by the First Amendment, let alone intended to convey a message or conveying an objective message. See *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 916, 102 S.Ct

Page 17 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

3409 (1982)(while nonviolent boycott activity is protected, violent conduct is not as "the First Amendment does not protect violence…[violence] may not constitutionally masquerade under the guise of 'advocacy'").

Finally, a culpable mental state - a specific intent to interfere with First-Amendment-protected conduct – must have driven the actions. *Mendocino Environmental Center v. Mendocino County*, 192 F3d 1283, 1300-1301 (9th Cir. 1999).  Plaintiff must have admissible evidence - either direct evidence or specific, substantial circumstantial evidence – demonstrating this culpable mental state.  *Reynaga v. Roseburg Forest Prods.*, 847 F3d 678, 690 (9th Cir. 2017).  Unsupported speculation as to a defendant's potential mental state is insufficient.  *Karam v. City of Burbank*, 352 F3d 1188, 1194 (9th Cir. 2003).   Further, the claim fails as a matter of law if the undisputed evidence demonstrates the challenged action would have been taken anyway.  *Lacey v. Maricopa County*, 693 F3d 896, 916-917 (9th Cir. 2012), *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901-902/ (9th Cir 2008).

There is no showing that Multnomah County deputies have intended to retaliate against any Plaintiffs, and further no evidence to suggest a likelihood that retaliation was the but for cause of any action(s) given the violent and unstable situation around the Justice Center. Further, there is no evidence that any such action is taking place as a matter of written policy, or as part of a widespread pattern or practice that is intentionally directed at protected conduct.

While Plaintiffs' motion is directed towards the City of Portland, in an abundance of caution Multnomah County respectfully submits there is inadequate evidence on this record to either suggest a likelihood of success or serious questions of First Amendment retaliation on the part of Multnomah County to warrant an extension of any preliminary injunction to apply to Multnomah County.

Page 18 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
                PRELIMINARY INJUNCTION

C.    **Plaintiffs Have Not Made the Requisite Serious Question or Likelihood Showing on the Fourth Amendment Claim Against Multnomah County.**

A Fourth Amendment *Monell* claim has four steps.  First, courts "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted." *Thompson v. Rahr*, 885 F.3d 582, 586 (9th Cir. 2018) Next, the court evaluates the government's interests by looking to the factors set forth in *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), along with other relevant factors given the particulars of the situation.  *S.R. Nehad v. Browder*,  *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018), *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994).  Third, the court balances the individual's interest against the government's interests weighing "the gravity of the intrusion on the individual against the government's need for that intrusion." *Id.*  Finally, the Court considers whether the requisite policy, practice, or custom was the moving force behind the deprivation.  *Plumeau,* 130 F.3d at 438.

Here, the type, amount, and duration of force varies dramatically, from being exposed to pepper spray or gas that has drifted to being struck with a less lethal impact round.  While pepper spray and impact tools are intermediate types of force, individualized facts like the number of times force was applied and whether multiple types of force occurred inform the amount.  *Smith v. City of Hemet*, 394 F.3d 689, 701-702 (9th Cir. 2005) *Young v. County of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011).   For individuals claiming a seizure through exposure to tear gas, the duration of exposure is likewise critical in weighing individual interest.  Compare *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001)(burst of spray, cleaned off within five minutes) with *LaLonde v. County of Los Angeles*, 204 F.3d 947, 952 (9th Cir. 2000)(initial reasonable use of pepper spray became unreasonable by unnecessary duration).

Page 19 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
            PRELIMINARY INJUNCTION

Factors to include in evaluating the governmental interest include the severity of the crime(s) at issue, whether the person poses an immediate threat, and whether the person is actively resisting or attempting to evade arrest.  *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865 (1989).  A court may also consider whether there are less invasive alternatives available to the officer, though the Fourth Amendment does not require of the officer the "superhuman judgment" necessary to always choose the least intrusive option in circumstances that are tense, uncertain, and rapidly evolving.  *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017), *Scott v. Heinrich*, 39 F.3d 912, 915 (9th Cir. 1994).   The force need not be the least invasive possible, but must be reasonable under the totality of the circumstances.  *Id.*

These factors are not exhaustive.  For instance, the governmental interest in preventing organized lawlessness or continued obstruction of business or law enforcement, even during political protest, is highly relevant to a Fourth Amendment analysis.  *Felarca v. Birgenau* 891 F.3d 809, 817-818 (9th Cir. 2018), *Forrester v. San Diego,* 25 F.3d 804, 807 (9th Cir. 1994).

There will be many individualized factors to consider for the governmental interest at a given moment with a given person.  Crimes at issue are varied depending on the circumstances, including riot if engaged in a common disorder and physically acting in a way to reasonably suggest an imminent breach of the peace.  ORS 166.015(1), *State ex rel. Juvenile Dep't of Washington Cty. v. Saechao*, 167 Or. App. 227, 233, 2 P.3d 935, 939 (2000), *State v. Chakerian*, 325 Or. 370, 378, 938 P.2d 756, 760 (1997).  Projectiles towards officers and attempts to breach the fence are objectively threatening behavior, and in such circumstances the governmental interest would necessarily be heightened.

The record also demonstrates that in many cases multiple verbal warnings were given prior to the use of any type(s) of force, which has a bearing on the governmental interest.  *Bryan*

Page 20 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
              PRELIMINARY INJUNCTION

*v. MacPherson,* 630 F.3d 805, 831 (9th Cir.2010). The governmental interest against continued organized lawlessness will be a factor, as will the ongoing hundreds of thousands of dollars of damage to public and private property caused by these nightly disturbances. *Felarca v. Birgenau* 891 F.3d 809, 817-818 (9th Cir. 2018), *Forrester v. San Diego,* 25 F.3d 804, 807 (9th Cir. 1994).

Again, though Plaintiffs' submissions are directed at the City of Portland, Multnomah County respectfully submits that the record does not demonstrate any Multnomah County policy, practice, or custom was the moving force behind any Fourth Amendment violations, and therefore an injunction is not warranted or appropriate against the County.

**D.    Plaintiffs Have Not Shown a Likelihood of Irreperable Harm from Multnomah County Absent Injunctive Relief.**

In *City of Los Angeles v. Lyons*, 461 U.S. 95, 96, 103 S.Ct. 1660 (1983), the plaintiff alleged Los Angeles police officers subjected him to a chokehold restraint during a traffic stop, and sought prospective injunctive relief, alleging that pursuant to municipal practice, officer "regularly and routinely apply these choke holds … [and Plaintiff] justifiably fears that any contact he has with Los Angeles police officers may result in his being choked and strangled to death." *Id.* The Court held that, while plaintiff had standing to sue for personal damages, he had not sufficiently articulated a case or controversy for injunctive relief; for standing he would need to plead and prove: "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner." *Id.*, at 105-106, emphasis in original.

Plaintiffs submissions do not establish either that all Multnomah County deputies either retaliate against protected First Amendment conduct or unconstitutionally seize through less

Page 21 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION

lethal munitions all protestors they encounter, or that the County ordered or authorized deputies to do so.  Of the declarations Plaintiffs have filed in this case, the vast majority refer to tear gas as the use of force.  Several mention do mention either the declarant being struck with, or seeing others struck with, a less lethal round or ordinance.  ECF 12, ¶13-14, ECF 48, ¶¶21-22, ECF 49, ¶10, ECF 52, ¶7, ECF 53, ¶5, ECF 58, ¶9, ECF 61, ¶5, ECF ¶62, ¶¶4, 5.

While none of these declarants identify Multnomah County deputies specifically, the Declaration of Mason Lake attaches a video showing protestors piling debris in front of an exit at the time less lethal rounds are allegedly used.  ECF ¶61, ¶5.   As described in Multnomah County's submissions, blocking or targeting points of ingress and egress at a jail that people had recently set fire to, during increasingly tumultuous and violent behavior outside that may require immediate evacuation, is both a serious threat and implicates Oregon's criminal riot statute. Compare ECF ¶61, ¶5, attached YouTube Link at 0:10 with Kaer Declaration, ¶20, ECF 19, ¶¶24, 25, ORS 166.015(1).  Another declarant mentions law enforcement shooting less lethal rounds in the context of "protestors moving fence around the building," consistent with the concerns mentioned by Lieutenant Kaer of access to the building after the break-in and fires of May 29th, 2020.  Compare ECF 62, ¶4 with Kaer Declaration, ¶¶18-20, ECF 19, ¶¶24-25.

While each individual of course has standing to sue for their own injuries, the evidence does not show that Multnomah County always uses any force indiscriminately or unconstitutionally or that they are using any force options against purely passive individuals as part of orders or policy.  Plaintiffs have not shown sufficient risk of irreparable injury at the hands of Multnomah County to justify applying any prospective injunctive relief sought against the City of Portland to Multnomah County.

Page 22 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
            PRELIMINARY INJUNCTION

E.     **The Impact of Plaintiffs' Proposed Injunction on the Public Would Be Substantial, and the Balancing of the Equities Weighs in Multnomah County's Favor.**

While deprivation of constitutional rights is unquestionably within the public interest, so too is the public's interest "in allowing police to do their jobs and to protect lives as well as property." ECF 29, p. 9.  The nightly damage and destruction throughout Portland has continued, with ongoing riotous behavior in the downtown area drawing a federal presence over the past days.  Rioters and vandals have caused over a quarter million dollars damage to the Justice Center and Courthouse, with numbers climbing each day and threats to the administration of our courts, our law enforcement, and our jails.   The Multnomah County's Sheriff is committed to upholding the rights of citizens to lawfully assemble and speak, and at the same time Sheriff Reese is a constitutional officer duty bound to defend the County from those who, by riot or otherwise, endanger the public safety.  See Oregon Constitution, Article VI, Section 6, ORS 206.010(2).

In nightly conditions that devolve into rioting, burning, property damage, threats against the safety of those in the Justice Center, and the surrounding area, law enforcement carries a heavy burden in circumstances that are tense, uncertain, and rapidly evolving.  *Graham v. Connor,* 490 U.S. 386, 397, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989).  To provide the sweeping injunction Plaintiffs seek during this time of increasingly destructive and tumultuous behavior in the Portland area necessarily lessens public safety and health, particularly given the strong social interest in preservation of order during times of emergency.  *City of Houston, Tex. V. Hill.* 482 U.S. 451, 471-472, 107 S.Ct 2502, 2515, 96 L.Ed 2d 398 (1987).  The traditional remedy for an officer's specific unconstitutional action – a suit for money damages – remains available, but the balancing of the equities weighs against prospective injunctive relief.

Page 23 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
          PRELIMINARY INJUNCTION

**F.      Plaintiffs' Proposed Injunction as Worded is Impermissibly Vague.**

Finally, as noted above, Fed. R. Civ. P. 65 requires the proposed injunction to be

sufficiently precise as put Defendants on adequate notice of the enjoined behavior.  Here,

Plaintiffs' proposed injunction is impermissibly vague in three respects.

First, the Motion's initial paragraph asks for a preliminary injunction prohibiting "The

City of Portland and all persons acting on its behalf be enjoined … from using crowd control

munitions on protesters OC spray or munitions, impact munitions, LRAD, sound cannons, etc.,

against protestors who are only engaged in passive resistance, "but in its conclusion asks for an

outright ban on "using crowd control munitions on protestors."  (ECF 45, pp. 1, 34).  It is unclear

which of the two injunctions Plaintiffs seek: (1) use against only passively resisting protestors, or

(2) a blanket restriction on all crowd control tactics.

Assuming the former, the second problem is that Plaintiffs' proposed injunction is non-

specific.  Plaintiffs' initial paragraph refers to enjoining OC, impact munitions, LRAD and sound

cannons with the modifier "et cetera."  If Plaintiffs seek equitable relief, they are obligated to

make sufficiently precise the tactics they seek to enjoin without using a catchall modifier.

Finally, Plaintiffs seek to preclude use of these tactics unless Defendants "insure (sic) that

no person who is engaged in only passive resistance is *impacted or effected* by those weapons

(emphasis added). ECF 45, p. 2.  It is unclear what Plaintiffs mean by "impacted or effected,"

even if a particular tactic is an appropriate use of force under the Fourth Amendment.  It is not

sufficiently precise to expose Defendants to the penalty of sanction or contempt without defining

what these terms mean prospectively.  *Foryune,* 364 F.3d at 1086, quoting *Schmidt v. Lessard*,

414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974).

*/// /// ///*

Page 24 – DEFENDANT MULTNOMAH COUNTY'S RESPONSE TO MOTION FOR
                PRELIMINARY INJUNCTION

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138

## V.    CONCLUSION

For these reasons, Multnomah County respectfully requests this Court deny Plaintiffs' Motion for a Preliminary Injunction to the extent such an injunction is intended to apply to Multnomah County, and set this matter for further proceedings after Defendants are given opportunity to file their respective responsive pleadings.

DATED this 6th day of July, 2020.

Respectfully submitted,

JENNY M. MADKOUR, COUNTY ATTORNEY
FOR MULTNOMAH COUNTY, OREGON

**/s/ B. Andrew Jones**

_____
B. Andrew Jones, OSB No. 091786
Senior Assistant County Attorney
*Of Attorneys for Defendant Multnomah County*

Multnomah County Attorney
501 S.E. Hawthorne Blvd., Ste. 500
Portland, Oregon 97214
(503) 988-3138