J. SCOTT MOEDE, OSB 934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
NAOMI SHEFFIELD, OSB 170601
Deputy City Attorney
naomi.sheffield@portlandoregon.gov
ROBERT YAMACHIKA, OSB 065560
Senior Deputy City Attorney
rob.yamachika@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DON'T SHOOT PORTLAND, a nonprofit corporation, in its individual capacity, NICHOLAS J. ROBERTS, in an individual capacity and on behalf of themselves and all others similarly situated, MICHELLE "MISHA" BELDEN, in an individual capacity and on behalf of themselves and all others similarly situated, ALEXANDRA JOHNSON, in an individual capacity and on behalf of themselves and all others similarly situated,<br><br>**PLAINTIFFS,**<br><br>v.<br><br>CITY OF PORTLAND, a municipal corporation**,** and MULTNOMAH COUNTY, a political subdivision of the State,<br><br>**DEFENDANTS.** | Case No. 3:20-cv-00917-HZ<br><br>DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS |

I.      INTRODUCTION

Plaintiffs move the Court for an order finding the Defendant City of Portland ("City") in contempt and seek remedial sanctions for alleged violations of the Court's orders restricting the use of tear gas ("Tear Gas Order") (Dkt. 29, June 9, 2020) and impact munitions, RBDDs and aerosol restraints ("Less Lethal Order") (Dkt. 43, June 26, 2020). In particular, plaintiffs argue that on June 26, 2020 into the morning of June 27, 2020 and again on June 27, 2020 and into the morning of June 28, 2020, PPB members used less lethal weapons in violation of the Less Lethal Order. Plaintiffs also allege that on June 25, 2020, PPB used tear gas in violation of the Tear Gas Order.

The City has not violated the orders. PPB used tear gas on June 25 to disperse a crowd that had created an immediate threat to the safety and lives of individuals inside North Precinct. Tear gas was used only after members of the group boarded up and barricaded doors to North Precinct, spray painted the security cameras, and lit the building on fire. The use of tear gas under these circumstances is in compliance with the Tear Gas Order.  Plaintiffs' contention regarding PPB's use of force on June 26, 2020 does not appear to describe force by PPB officers. Finally, plaintiffs' declarants describe uses of force on June 27, 2020 that were in compliance with the Less Lethal Order. Plaintiffs argue their themes for the case that "the City is using force as a means of dispersing crowds" and "officers have no intention of arresting anyone." Based on these contentions, plaintiffs ask the Court to rule based on "the overall purpose of both of this Court's orders." (Pls.' Motion for Finding of Contempt and for Sanctions ("Pls.' Motion"), Dkt. 55 at 15). But a motion for contempt is not the place for plaintiffs to seek redress for alleged Fourth Amendment violations. In fact, most of plaintiffs' declarants do not appear to have even alleged Fourth Amendment violations. The City asks the Court to look specifically as to whether PPB officers have complied with the requirements in the two temporary restraining orders. The facts presented, even by plaintiffs, show that they have.

Page 1 –    DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS

II.  **FACTS**

    A.  <u>June 25, 2020-June 26, 2020</u>

        1.  <u>Demonstration at the Justice Center</u>

Plaintiffs describe police officers jumping out from behind plywood doors at the Justice Center and "indiscriminately [shooting] whoever happened to be standing near by." (Declaration of Princess Blair Unicorn ("Unicorn Decl."), Dkt. 62, ¶ 4). On June 25, 2020, PPB officers were not subject to any temporary restraining order regarding the use of impact munitions, which appears to be what plaintiffs describe. (Less Lethal Order, Dkt. 43). Moreover, PPB Officers were responding to demonstrations at North Precinct, not the Justice Center, on June 25. (Declaration of Anthony Passadore ("Passadore Decl."), Dkt. 88, ¶¶ 25-26).

        2.  <u>Demonstration at Portland Police Bureau's North Precinct</u>

On June 25, 2020, a group of protestors marched to PPB's North Precinct. (*Id.* at ¶ 26). At approximately 10:00 p.m., several hundred protestors gathered around the intersection of NE Emerson and NE MLK. They began building a fence and erecting a barricade. (*Id.* at ¶ 27). While erecting the barricade, some protestors began throwing projectiles, including glass bottles, at police officers. (*Id.*).

At around midnight on June 26, demonstrators had barricaded the doors of North Precinct using drills. (*Id.* at ¶ 31). By 12:30 a.m., demonstrators had obscured the building's security cameras. (*Id.* at ¶ 32). As the Incident Commander waited for more officers, some demonstrators began shining green lasers in officers' eyes and ramming dumpsters into the North Precinct doors. Fireworks were also thrown at officers over the barricade that protestors had erected. (*Id.* at ¶ 33). At approximately 1:00 a.m., PPB declared an unlawful assembly because of concerns for the life and safety of officers and persons in custody within North Precinct. (*Id.* at ¶¶ 34-35). At approximately 1:20 a.m., officers began moving the crowd from the immediate area around North Precinct. (*Id.* at ¶ 36).

Page 2 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS

Later in the evening, protestors lit a large dumpster fire on NE MLK, which PPB monitored, but did not respond to because it remained contained. (Passadore Decl., ¶ 40). By 2:14 a.m., demonstrators had set fire to the north side of the building where North Precinct is located. (*Id*. at ¶ 41). Once the Incident Commander received reports of the fire, he determined that it was necessary to use tear gas to disperse the crowd. (*Id.* at ¶ 42). Officers Schoening and Taylor each deployed tear gas to disperse the crowd. (Declaration of Franz Schoening ("Schoening Decl."), Dkt. 93, ¶ 11; Declaration of Brent Taylor ("Taylor Decl."), Dkt. 97, ¶ 21). After the crowd dispersed, Portland Fire and Rescue was brought in to assess the building and put out the dumpster fire. (Passadore Decl., ¶ 44).

      3.      <u>June 26, 2020-June 27, 2020</u>

Plaintiffs' declarants assert that PPB shot projectiles from the Justice Center on June 26, 2020. (Declaration of Frederick Garlick ("Garlick Decl."), Dkt. 50, ¶¶ 13, 14; Declaration of Mason Lake ("Lake Decl."), Dkt. 61, ¶ 4; Declaration of Aubrey Danner ("Danner Decl."), Dkt. 56, ¶ 9). No PPB officers deployed munitions from either inside the Justice Center or from the portico in front of the Justice Center on June 26, 2020. (Declaration of Craig Dobson ("Dobson Decl."), Dkt. 105, ¶ 71).

      4.      <u>June 27, 2020-June 28, 2020</u>

On June 27, demonstrators came to the Justice Center at around 7:30 p.m. (Dobson Decl., ¶ 72). They immediately began blocking SW 3rd Ave. at SW Main with chained plastic barricades. (*Id*.).

At approximately 10:25 p.m., PPB declared an unlawful assembly in order to reopen SW 3rd and remove the barricades that had been erected. (Dobson Decl., ¶ 73). PPB brought in flatbed tow trucks to carry away the constructed barriers. (*Id*.). Seven minutes after the announcement, very few demonstrators had left the roadway. (*Id*.). PPB officers began to push the crowd up to SW 4th Ave. During this push, demonstrators threw rocks, glass bottles and paint

Page 3 –    DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS

at PPB officers. (*Id.*; Declaration of Craig Lehman ("Lehman Decl."), Dkt. 84, ¶ 20; Declaration of Erik Kammerer ("Kammerer Decl."), Dkt. 79, ¶ 55). They also shined lasers in officers' eyes. (Declaration of Andrew Kofoed ("Kofoed Decl."), Dkt. 80, ¶ 12; Declaration of Zachary Domka ("Domka Decl."), Dkt. 74, ¶ 24).

During this movement, two officers deployed RBDDs, both in the direction of small groups of people who were throwing items at the line of officers. (Kammerer Decl., ¶ 56; Kofoed Decl., ¶ 12). Three officers used impact munitions at individuals who were physically swinging umbrellas at officers or picking up objects to throw at officers. (Taylor Decl., ¶ 24; Domka Decl., ¶ 23; Declaration of Nicholas Bianchini ("Bianchini Decl."), Dkt. 83, ¶ 25). Additionally, two PPB officers used handheld OC spray toward the person swinging the umbrella at officers, as well as an individual spray painting an officers' face mask. (Domka Decl., ¶ 23; Kofoed Decl., ¶ 29). PPB deployed smoke to distract the crowd so officers could pull back from the area safely once the barricades had been removed. (Taylor Decl., ¶ 25).

Just before 1:30 a.m., the protestors moved to the SW 2nd Avenue side of the Justice Center. (Dobson Decl., ¶ 75). Some individuals attempted to block the door to the precinct, as well as the roll-down gates. A police officer attempted to arrest one individual but was hit in the face with a skateboard. (*Id.*). At this point, the PPB Sound truck announced an unlawful assembly and directed protestors to leave the area. Officers attempted to move the crowd to SW 2nd and SW Main. (*Id.*). The crowd pulled two dumpsters from the corner of SW 2nd and SW Main into the street. (*Id.*). At that point, the Incident Commander closed the area from SW 1st to SW 6th from Clay to Morrison and officers began to push back the crowd. (*Id.*).

During this push, two officers again deployed RBDDs. One deployed an RBDD to deter the individuals who were moving large dumpsters toward the police and another deployed an RBDD in response to persons throwing projectiles at the police. (Kofoed Decl., ¶ 13; Lehman Decl., ¶ 21). Three PPB officers deployed bursts of OC spray directed at individual subjects who

were pushing back and grabbing at police officers on the line, struggling with officers, and physically resisting the attempt to move the group back. (Schoening Decl., ¶ 14; Lehman Decl., ¶¶ 28-29; Kofoed Decl., ¶ 14). Additional smoke was deployed. (Kofoed Decl., ¶ 15). Additionally, three officers deployed impact munitions at individuals pointing lasers into officers' eyes, rolling the dumpsters at officers, physically struggling with officers, running at officers with lit flares, and throwing objects at officers. (Domka Decl., ¶¶ 24-25; Taylor Decl., ¶ 26; Bianchini Dec., ¶ 26; Lehman Decl., ¶¶ 23-25).

### III.   ARGUMENT

#### A.   Legal Standard

"A Court may hold a party in civil contempt when the party has displayed 'disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535, 539 (N.D. Cal. 2019) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). Plaintiffs have "the burden of showing by clear and convincing evidence that the [City] violated a specific and definite order of the court." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *Stone v. City and Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). Typically, "civil contempt 'should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019) (quoting *Ca. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). The Supreme Court has explained that "[t]his standard reflects the fact that civil contempt is a 'severe remedy,' and that principles of 'basic fairness requir[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." *Id*. (citations omitted).

While contempt does not require that a party's conduct was willful, and there is no good faith exception, "a person should not be held in contempt if his action 'appears to be based on a

Page 5 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION
           FOR FINDING OF CONTEMPT AND FOR SANCTIONS

good faith and reasonable interpretation of the [court's order].'" *Dual-Deck*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). Moreover, "'[s]ubstantial compliance' with the court order is a defense to civil contempt, and is not vitiated by 'a few technical violations' where every reasonable effort has been made to comply." *Id*.

  B. <u>June 25-26, 2020</u>

Plaintiffs discuss the use of many different munitions, at different locations, on June 25, 2020 (some of which were not deployed by PPB). However, on June 25, 2020, PPB officers were not subject to the Less Lethal Order. (Less Lethal Order, Dkt. 43). The City cannot, therefore, be in contempt based on any of these actions on this day.

As discussed above, PPB deployed tear gas in the early morning on June 26, 2020 after individuals gathered at North Precinct barricaded multiple exits, spray painted the security cameras to obscure observation, and lit the building on fire. Plaintiffs do not dispute that this occurred. (Declaration of Gillian Herrera ("Herrera Decl."), Dkt. 58, ¶ 7; Unicorn Decl., ¶ 9; Declaration of Maggie Sisco ("Sisco Decl."), Dkt. 60, ¶ 4). Attempting to lock people into an occupied building and lighting it on fire puts the lives and safety of everyone in that building at risk—it creates a very serious and significant risk of injury. (Tear Gas Order, Dkt. 29).

  C. <u>June 26, 2020</u>

Plaintiffs' declarants describe uses of force on June 26, 2020 from the inside of the Justice Center and from the portico of the Justice Center. (Lake Decl., ¶¶ 4-5; Danner Decl., ¶ 9; Garlick Decl., ¶¶ 10-14). This includes plaintiffs' assertion of force against someone that a declarant believed may have been 12-years old. (Garlick Decl., ¶ 11). As discussed above, PPB officers did not deploy force from either inside the Justice Center or the portico of the Justice Center. Because plaintiffs' declarants describe force on June 26 that was not from PPB officers, it cannot constitute evidence of contempt.

Page 6 – DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

D. <u>June 27, 2020</u>

Plaintiffs' declarants largely describe witnessing force on June 27, 2020, while a handful describe being the subject to the alleged uses of force. Most of the force described by plaintiffs' declarants involved force that is not the subject to either restraining order. In fact, plaintiffs' concede that the individual violations they allege "pale in comparison to the overall theme." (Pls.' Motion at 15). Plaintiffs' expressed concerns appear to be captured by the repeated allegations that PPB officers "beat" protestors for no reason. (*Id*.). Any allegations of police misconduct, particularly involving the use of force, are serious. And the City is certainly responsible for evaluating each allegation of misconduct by PPB officers to ensure that the force used was appropriate under both law and PPB Directives. But such alleged uses of force—baton pushes and punching (Unicorn Decl., ¶ 18)—are indisputably outside the scope of either temporary restraining order for the City. A finding of contempt is a wholly unwarranted remedy to address these allegations. *Affordable Media*, 179 F.3d at 1239 (requiring violation of a "specific and definite order of the court").

Plaintiffs' declarants similarly contend that they were impacted by chemical agents. (Declaration of Natalie Ann Norcross ("Norcross Decl."), Dkt. 51, ¶ 6; Declaration of Hilary Jepsen ("Jepsen Decl."), ¶¶ 4-6; Unicorn Decl., ¶ 19). PPB officers deployed smoke on June 27, which is not the subject of any temporary restraining order. (Kofoed Decl., ¶ 15; Taylor Decl., ¶ 25). Plaintiffs seem to acknowledge that it may not have been one of the chemical agents contemplated in the restraining orders, but nonetheless say "its actual effects were identical to tear gas." (Pls.' Motion at 10). Plaintiffs' counsel and the City's counsel discussed smoke prior to agreement on the Less Lethal Order, and plaintiffs agreed to a temporary restraining order that did not include this item. (Declaration of Scott Moede ("Moede Decl."), ¶ 1, Ex. A). The Court should not hold the City in contempt for use of an item that was knowingly excluded from the temporary restraining orders.

In addition to allegations regarding uses of force and tools that were not subject to either temporary restraining order, plaintiffs' declarants discuss some observations regarding uses of the types of force that were subject to the Less Lethal Order. Plaintiffs argue that the use of OC spray on June 27, 2020 violated the Less Lethal Order. The temporary restraining order provides that OC spray "shall not be used against persons engaged in passive resistance, and consistent with PPB Use of Force Directive 1010, members shall minimize exposure to non-targeted persons." (Less Lethal Order, Dkt. 43 at 2). Passive resistance "means a person's non-cooperation with a member that does not involve violence or other active conduct by the individual." (*Id*.). The only one of plaintiffs' declarants that appears to have been impacted by OC spray on June 27, 2020 was Declarant Garlick. After repeated announcements to get out of the street and remove the barriers that were constructed in the street, protestors refused. Declarant Garlick "formed a front line with umbrellas, shields, and signs to protect people behind us." (Garlick Decl., ¶ 23). The choice to use signs, umbrellas, and shields to prevent the police from moving the crowd is not simply "non-cooperation," but rather involves "active conduct by the individual." (Less Lethal Order, Dkt. 43 at 2). Declarant Garlick appears to be describing force deployed by Officer Domka. Officer Domka described deploying OC spray to protect Officer Giles because "a white male [was] swinging an umbrella at Officer Giles." (Domka Decl., ¶ 23). Plaintiffs cite to Declarants Kaplan and Unicorn, who both describe observing officers use OC spray, but provide no evidence that would allow the Court to determine whether the uses of force were consistent with the Less Lethal Order. (Declaration of Camilla Ruth Kaplan ("Kaplan Decl."), ¶ 14; Unicorn ¶ 15). Plaintiffs also cite Declarant Jepsen, who appears to be describing smoke. (Jepsen Decl., ¶ 6).

Plaintiffs also contend that the City violated the second temporary restraining order by using impact munitions against people engaged in passive resistance. They cite to Declarant Garlick, who generally contends to have been a witness to the use of impact munitions on June

Page 8 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION
           FOR FINDING OF CONTEMPT AND FOR SANCTIONS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

27, explaining only that "[o]fficers also fired pepper balls at people." (Garlick Decl., ¶ 28). They also cite to Declarant Trumbly, who purports to have heard "the distinct popping sounds of the compressed-air gun that the police use to shoot what are often called pepper balls." (Declaration of Gabriel Trumbly ("Trumbly Decl."), Dkt. 57, ¶ 12). But at no point do plaintiffs provide evidence that the use of these impact munitions were used inconsistent with PPB Directive 1010.00 or "used where people engaged in passive resistance are likely to be subjected to the force." (Less Lethal Order, Dkt. 43 at 2).[1]

Finally, Plaintiffs argue that the use of rubber ball distraction devices by PPB officers on June 27, 2020 violated the temporary restraining order. They cite to Declarant Kaplan, who contends that "[l]aw enforcement threw another flash bang grenade, and I felt something hot hit my leg." (Kaplan Decl., ¶ 10). Although uncited, Declarant Garlick also states that "police began launching flash bangs at people walking west toward 4th Ave." (Garlick Decl., ¶ 27). And Declarants Trumbly and Unicorn similarly attest, without detail, to witnessing what they refer to as a "flash bang." (Trumbly Decl., ¶¶ 12-13; Unicorn Decl., ¶ 21). PPB officers deployed four rubber ball distraction devices on June 26, 2020. Sergeant Kofoed deployed an RBDD at approximately 10:25 p.m. toward a group of people who were throwing things at officers. (Kofoed Decl., ¶ 12). Detective Kammerer observed a group of four individuals throwing glass bottles and other objects at the line of officers. Like Sergeant Kofoed, he deployed a single RBDD directly in front of this small group. (Kammerer Decl., ¶¶ 56-57). Similarly, Officer Lehman deployed a single RBDD at the front of a line of individuals who were pushing back against officers while others behind them threw paint balloons, glass bottles, and feces at officers. (Lehman Decl., ¶¶ 19-22). Sergeant Kofoed deployed an RBDD in the early morning of

---

[1] Plaintiffs also cite to Lake Decl., ¶ 4 and Garlick Decl., ¶¶ 11-12, which discuss the night of June 26, and appear to describe an incident that did not involve PPB officers. They also cite Kaplan Decl., ¶ 10, which purports to describe Declarant Kaplan being hit by a rubber ball distraction device.

Page 9 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION
           FOR FINDING OF CONTEMPT AND FOR SANCTIONS

June 28 at a group of individuals who had pulled dumpsters into the street and were pushing them toward officers, in an apparent attempt to hit officers with the dumpsters. (Kofoed Decl., ¶ 13). Each of these RBDDs was deployed to address concerns for officer safety and were not used to disperse crowds where there was little or no risk of injury. (Less Lethal Order, Dkt. 43).

E. Remedies

A "party's good faith, even where it does not bar civil contempt, may help to determine an appropriate sanction." *Taggart*, 139 S. Ct. at 1802. "[T]he use of the contempt power places an additional limitation on a district court's discretion for as the Court of Appeal recognized, 'in selecting contempt sanctions, a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United States*, 493 U.S. 265 (1990). Here, PPB has demonstrated good faith compliance with the temporary restraining orders. Moreover, plaintiffs' requested remedies demonstrate the difficulty in both structuring and enforcing an injunction regarding the lawful use of force by police officers.

Plaintiffs' requested remedies do not fit the alleged violations. First, plaintiffs request a "complete ban on the use of certain 'less lethal weapons' in any crowd control situation." (Pls.' Motion at 2). While plaintiffs do not identify which weapons they would seek to ban, a complete ban on less lethal tools would leave officers with more limited tools that could result in greater uses of force. (Schoening Decl., ¶ 18). This constrains PPB officers far beyond any limitations of the Fourth Amendment and would severely inhibit their ability to respond to individuals engaged in violent criminal activity.

Plaintiffs next ask that less lethal weapons should be "authorized by a politically accountable leader, such as Mayor Ted Wheeler." (Pls.' Motion at 3). This requested remedy would require that the Mayor, who is neither a trained law enforcement officer nor a lawyer, determine when and what level of force is necessary in a given situation. There is undoubtedly a role for policy makers in determining the range of tools available to law enforcement officers.

Page 10 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION
              FOR FINDING OF CONTEMPT AND FOR SANCTIONS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

However, placing a particular decision to use force in the hands of an individual who has no background or training that would allow him to make a determination consistent with constitutional requirements is inappropriate.

Plaintiffs ask the Court to prohibit individual members who violated the Court's orders from participating in future crowd control operations. (Pls.' Motion at 3). Plaintiffs have not offered clear and convincing evidence that any individual members violated either temporary restraining order. Plaintiffs offer general allegations regarding the use of force, but very limited descriptions of particular incidences of force that allegedly violated the temporary restraining orders. Given the limited information, it would be challenging or impossible to identify the officers who engaged in the alleged misconduct.

Finally, plaintiffs suggest fines to compensate the individual class members for their injuries and to deter future violations. Notwithstanding that plaintiffs have not applied for class certification and no class has been certified in this case, compensating individuals who are the subject of unconstitutional force is a remedy that exists notwithstanding this Court's temporary restraining orders. Those individuals who are actually the subject of alleged excessive force can seek damages against the individual officer.

Plaintiffs' motion for contempt and requested remedies are demonstrative of why injunctive relief regarding use of force is problematic. To analyze the constitutionality of any particular use of force, this Court must consider the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (the test for reasonable "requires careful attention to the facts and circumstances of each particular case"). The vast majority of the force they describe was witnessed, but there is no impacted individual asserting a constitutional violation. Plaintiffs are using the temporary restraining orders and this motion to ask this Court to act as a monitor of every use of force. But there are already processes in place for evaluating uses of force. There are also already legal remedies available to individuals who are the subject of unconstitutional

Page 11 –   DEFENDANT CITY OF PORTLAND'S RESPONSE TO PLAINTIFFS' MOTION
            FOR FINDING OF CONTEMPT AND FOR SANCTIONS

force. Coming before the Court to discuss every use of force by any PPB officer at any protest, however, is an untenable outcome.

## IV. CONCLUSION

Plaintiffs' have failed to present clear and convincing evidence that PPB officers violated either restraining order. Based on the argument above, the City asks the Court to deny Plaintiffs' Motion for Finding of Contempt and for Sanctions Against Defendant City of Portland.

Dated: July 14, 2020.

Respectfully submitted,

/s/ Naomi Sheffield
J. SCOTT MOEDE, OSB 934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
NAOMI SHEFFIELD, OSB 170601
Deputy City Attorney
naomi.sheffield@portlandoregon.gov
ROBERT YAMACHIKA, OSB 065560
Senior Deputy City Attorney
rob.yamachika@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*