J. SCOTT MOEDE, OSB 934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
NAOMI SHEFFIELD, OSB 170601
Deputy City Attorney
naomi.sheffield@portlandoregon.gov
ROBERT YAMACHIKA, OSB 065560
Senior Deputy City Attorney
rob.yamachika@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DON'T SHOOT PORTLAND, a nonprofit corporation, in its individual capacity, NICHOLAS J. ROBERTS, in an individual capacity and on behalf of themselves and all others similarly situated, MICHELLE "MISHA" BELDEN, in an individual capacity and on behalf of themselves and all others similarly situated, ALEXANDRA JOHNSON, in an individual capacity and on behalf of themselves and all others similarly situated, | **3:20-cv-00917-HZ**<br><br>**DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT** |
| **PLAINTIFFS,** | |
| v. | |
| CITY OF PORTLAND, a municipal corporation**,** and MULTNOMAH COUNTY, a political subdivision of the State, | |
| **DEFENDANTS.** | |

Page  1  –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
PORTLAND FROM THE SECOND AMENDED COMPLAINT

## <u>CERTIFICATE PURSUANT TO LOCAL RULE 7-1</u>

Counsel for defendant City of Portland certifies that counsel for defendants and counsel for plaintiffs have made good faith effort to resolve the issues in dispute and have been unable to do so.

## <u>MOTION</u>

Defendant City of Portland ("the City") moves the Court to dismiss plaintiff Don't Shoot Portland ("Don't Shoot Portland") from the Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), or in the alternative, for a more definite statement pursuant to Rule 12(e). The SAC was originally filed by four named plaintiffs which includes Don't Shoot Portland, a nonprofit corporation on its own behalf, and three other individual plaintiffs on behalf of themselves individually and all others similarly situated.  In addition to Don't Shoot Portland, Mr. Nicholas Roberts[1], Mx. Michelle "Misha" Belden[2], and Ms. Alexandra Johnson[3] (collectively "Plaintiffs") are named plaintiffs. Plaintiffs bring 42 U.S.C. § 1983 claims alleging excessive force in violation of the Fourth Amendment, as well as First Amendment claims. This motion concerns plaintiff Don't Shoot Portland only and not the three individual plaintiffs.

Specifically, the City moves the Court for an Order concerning Don't Shoot Portland as follows:

1.    Dismissing Don't Shoot Portland from the SAC for failure to state a claim under Rule 12(b)(6).

---

[1] The City's Motion to Dismiss uses the pronouns "he" or "him" and prefix "Mr." for Plaintiff [Nicholas Roberts] consistent with the pronouns indicated in Plaintiffs' SAC.

[2] The City's Motion to Dismiss uses the pronouns "they" or "them" and prefix "Mx." for Plaintiff [Michelle "Misha" Belden] consistent with the pronouns indicated in Plaintiffs' SAC.

[3] The City's Motion to Dismiss uses the pronouns "she" or "her" and prefix "Ms." for Plaintiff [Alexandra Johnson] consistent with the pronouns indicated in Plaintiffs' SAC.

Page 2 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
　　　　　　PORTLAND FROM THE SECOND AMENDED COMPLAINT

2.      Alternatively, dismissing Don't Shoot Portland from the SAC for lack of constitutional standing pursuant to Rule 12(b)(1).

3.      In the alternative, requiring an amended complaint containing a more definite statement of Don't Shoot Portland's claims pursuant to Rule 12(e).

## BACKGROUND

As noted in prior filings with this Court, thousands of Portlanders have joined with millions around the country to protest the injustices of police brutality and racism, highlighted by the police killing of George Floyd, an African-American man, by a white Minneapolis police officer on May 25, 2020. These protests are clearly protected First Amendment expression, subject to the lawful time, place and manner restrictions, associated with all protected expression. In fact, the City agrees with plaintiffs, including Don't Shoot Portland, that peaceful protests are essential to advancing a long overdue need for meaningful reform and restorative justice. (*See* SAC, ¶ 4).

The undeniably important message of these protests is not in dispute. This case does not relate to those thousands of people who have powerfully expressed these important values. Rather, the case involves the PPB's response to a much smaller number of people who have not peaceably assembled, but have instead engaged in violent, destructive, life-threatening, criminal activity. To a notable degree, plaintiffs separate their conduct from those engaged in violence and destruction. In this regard, plaintiffs' case is no different than other protest-related litigants: plaintiffs Mr. Roberts, Mx. Belden, and Ms. Johnson allege they have suffered physical and emotional injuries because law enforcement officers have chilled protected speech through their use of force, and because the police have used excessive force against them in the context of crowd management and control. (*See* SAC, ¶¶ 29-37.).

On the other hand, as currently written, the City cannot discern what plaintiff Don't Shoot Portland's bases are for its Fourth Amendment excessive force and First Amendment

Page 3 –      DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
              PORTLAND FROM THE SECOND AMENDED COMPLAINT

retaliation claims. Don't Shoot Portland states in its Second Amended Complaint that it "is a Black-led organization whose fundamental mission is to advocate for social and racial justice in Portland." SAC ¶ 4.  An examination of Don't Shoot Portland's public corporate records reveals in its latest annual report filed September 5, 2019 and its reinstatement amendment filed September 8, 2020, that its core business activity is "grassroots community action plan-promote civic engagement and nonviolent action through art" and lists Tai Carpenter as President.[4]

As alleged in the SAC, Don't Shoot Portland holds various community programs and trainings, including "a children's art and social justice council, community clothing tree, and community legal clinics." SAC ¶ 4. Additionally, Don't Shoot Portland "advocates for social justice and change though supporting direct action in a safe manner; participating, organizing and supporting protests; providing know your rights trainings and information; and providing jail support to people arrested during demonstrations." SAC ¶ 4. Besides a general description of its mission and related programs, activities, and use of resources, the only concrete and particularized one-paragraph statement alleged by Don't Shoot Portland other than the plaintiff's two claims for relief found in paragraphs 47-59 of the Second Amended Complaint can be fully quoted here in its three sentences: "Don't Shoot Portland has been participating [in] the local demonstrations and providing assistance and support to protesters. It has participated in, monitored, and amplified calls to end racist policing and the violent police response to nonviolent protesters. It strongly opposes the use of tear gas, 'less lethal' weapons, and any force against protesters." (SAC, ¶ 28.).

///

///

---

[4] Oregon Secretary of State, Corporate Division,
http://records.sos.state.or.us/ORSOSWebDrawer/Recordpdf/7555275;
http://records.sos.state.or.us/ORSOSWebDrawer/Recordpdf/6899943 (Last visited September 9, 2020).

Page  4  –   DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

## STANDARDS

### Rule 12(b)(6)

Under Rule 12(b)(6), a motion to dismiss may be granted where the plaintiff has failed to allege facts that, when accepted as true, give rise to a plausible inference that the defendants violated the plaintiff's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556–57 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 679 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### Rule 12(b)(1)

Pursuant to Article III of the U.S. Constitution, federal courts may only hear cases if the plaintiffs can establish they have standing. *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011). "A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Otherwise, the court must dismiss the claims for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

### Rule 12(e)

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Motions for more definite statements "attack the intelligibility

Page 5 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
PORTLAND FROM THE SECOND AMENDED COMPLAINT

of the complaint, not the lack of detail." *Obsidian Fin. Grp., LLC v. Crystal Cox*, No. CV-11-57-HZ, 2011 WL 13253340, at *1 (D. Or. May 19, 2011).

## DISCUSSION

### I.    Don't Shoot Portland Has Not Alleged Plausible Fourth Amendment *Monell* Claims

Plaintiff Don't Shoot Portland's Fourth Amendment *Monell* claims at paragraphs 47-52 fail to meet the *Iqbal/Twombly* pleading standard because Don't Shoot Portland fails to plead any facts supporting such a claim.  The Supreme Court's decisions in *Iqbal/Twombly* imposed a demanding pleading standard, requiring plaintiffs to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Supreme Court emphasized in *Iqbal* that conclusory allegations are not entitled to the presumption of truth. 556 U.S. at 681. The Ninth Circuit has interpreted *Iqbal/Twombly* as setting forth two essential principles:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, Don't Shoot Portland's allegations to support its *Monell* claim are conclusory, and fail to plausibly support a claim for relief. To state a *Monell* claim, a plaintiff must allege facts establishing: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had an official policy, or pervasive custom or practice; (3) that the policy, custom, or practice amounted to "deliberate indifference" to the plaintiff's constitutional rights; and (4) causation of such a degree that the deliberately indifferent policy, custom, or practice

Page  6 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

was the "moving force" behind the constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 380 (1989); *Horton v. City of Santa Maria*, 915 F.3d 592, 602–603 (9th Cir. 2019); *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011).

As an initial and dispositive matter, Don't Shoot Portland has not sufficiently plead that it was deprived of a constitutional right. On this basis alone, the Court should dismiss Don't Shoot Portland's *Monell* claims against the City. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.").

Notwithstanding this deficiency, Don't Shoot Portland's First Claim for Relief nonetheless attempts to allege municipal liability based on an "Unlawful Practice or Policy Allowing Indiscriminate Use of Force as Tactic to Disperse Crowd." For example, the first part[5] of Count 1 reads:

> The City of Portland and Multnomah County each have an official policy allowing the use of "riot control" and "less lethal" weapons against a crowd whenever it determines that the crowd creates a "civil disturbance." This policy has no relationship with the *Graham v. Connor* Fourth Amendment standard regulating the use of force against individuals. It expressly allows for the indiscriminate use of force against a crowd of people, including those engaging in passive resistance, in violation of the Fourth Amendment.
>
> Alternatively, even if the policy itself is constitutional, PPB's and MCSO's actual practice and custom is to allow the use of

_____

[5] The second and final part of count 1 reads as follows: "On May 29, 30, 31 and June 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20, 2020, PPB and MSCO deployed tear gas and/or other "less lethal" weapons on large crowds of peaceful protesters and continued to deploy tear gas and/or "less lethal" weapons at people running away. Videos documenting the indiscriminate nature of this force deployment are rampant. The City and County have tacitly and explicitly authorized the use of indiscriminate crowd control munitions on crowds of protesters by justifying uses of similar tactics, including "less lethal" weapons shot indiscriminately into crowds of protesters, at protests on these dates. The City and County, acting pursuant to this policy, custom, or practice, unlawfully used tear gas and "less lethal" weapons against plaintiffs as alleged above." (SAC, ¶ 49.).

Page 7 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
            PORTLAND FROM THE SECOND AMENDED COMPLAINT

"riot control" and "less lethal" weapons against a crowd both before and after an "unlawful assembly" and/or a "civil disturbance" has been declared, even when a substantial numberof people in that crowd, or even the majority of that crowd, are engaged only in the passive resistance to an order.

SAC at ¶ 48.

These allegations do not state a claim on behalf of Don't Shoot Portland.  Don't Shoot Portland refers to the *Graham v. Connor* reasonableness of force standard in Count 1, claiming that the City, through either an unconstitutional policy or unlawful practice "expressly" permits the use of "indiscriminate" and excessive force for crowd control in violation of the Fourth Amendment. SAC at ¶ 48. To state an excessive force claim, plaintiff must allege facts showing that an officer's conduct was "objectively [un]reasonable in light of the facts and circumstances confronting them[.]" *Mihailovici v. Snyder*, No. 3:15-CV-01675-KI, 2016 WL 447842, at *4 (D. Or. Feb. 4, 2016) citing *Graham v. Connor*, 490 U.S. 386, 397 (1989). Where plaintiff brings a claim under 42 U.S.C. §1983, asserting that defendants used excessive force against them in violation of their Fourth Amendment right to be secure against unreasonable seizures, the critical question "is whether the use of force was 'objectively reasonable in light of the facts and circumstances confronting' the ... officer[ ]." *Sanchez v. Marion Cty.*, No. 6:14-CV-724-AA, 2016 WL 680814, at *2 (D. Or. Feb. 16, 2016), citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (quoting *Graham*, 490 U.S. at 397).

The Ninth Circuit has articulated its Fourth Amendment analysis stating: "[o]ur analysis involves three steps. First, we must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted." *Glenn v. Washington Cty*, 673 F.3d 864, 871 (9th Cir. 2011), quoting *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010) (quoting *Miller v. Clark County,* 340 F.3d 959, 964 (9th Cir. 2003)). "[E]ven where some force is justified, the amount actually used may be excessive." *Glenn*, 673 F.3d at 871, quoting *Santos v. Gates,* 287 F.3d 846, 853 (9th Cir. 2002). Second, we evaluate the government's interest in the use of force. *Graham,* 490 U.S. at 396. Finally, "we

Page 8 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Miller,* 340 F.3d at 964.

In this case, looking at the type and amount of force allegedly inflicted against Don't Shoot Portland, there was none. Don't Shoot Portland asserts its excessive force claim as fruit of either an unconstitutional policy or, in the alternative, a constitutionally-valid policy but otherwise unlawful practice. SAC, ¶¶ 48-49. Regardless of either alleged scenario, the *Graham* reasonableness force standard still applies for excessive force claims. Don't Shoot Portland, unlike the three individual plaintiffs, Mr. Roberts, Mx. Belden, and Ms. Johnson, has not pled any facts that the City (through PPB) has inflicted any type or level of force against the nonprofit corporation whatsoever. For that reason alone, this claim fails the *Iqbal/Twombly* pleading standard. SAC, ¶¶ 28-37.

Don't Shoot Portland's Count 2 and 3 *Monell* claims based on the actions and ratification of the Chief of PPB and the Mayor of Portland should also be dismissed for similar reasons. SAC, ¶¶ 50-52. Here, Don't Shoot Portland simply pleads no facts with which to establish that the City has harmed it or taken any specific action or ratification as to Don't Shoot Portland. For example, without pleading an adequate factual basis going beyond merely identifying the policy or practice at issue, Don't Shoot Portland cannot demonstrate that it was the "moving force" behind some injury (which it fails to allege), and there must be a direct causal link between the municipal action and the deprivation of federal rights. Don't Shoot Portland must allege a sufficient causal connection between the policymaking officials' actions, which means alleging that they "knew or reasonably should have known" that their action "would cause others to inflict a constitutional injury." The Second Amended Complaint has failed to allege sufficient knowledge on the part of the Chief of PPB and the Mayor of Portland to establish that connection.

Page 9 – DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

Don't Shoot Portland cannot show that the City's alleged excessive force against it was the product of a custom or policy of the City and was the moving force behind its alleged injury. In fact, Don't Shoot Portland pleads no facts to support when it even attended the protests in question, let alone any inference of an injury. SAC, ¶¶ 4, 28, 47-59. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv., 572 F.3d 962,* 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Accordingly, Don't Shoot Portland's Fourth Amendment *Monell* claims should be dismissed.

## II.     Don't Shoot Portland's First Amendment Municipal Liability Claim Fails the *Iqbal/Twombly* Pleading Standard

Don't Shoot Portland's allegations in paragraphs 53-59 also do not support a claim for First Amendment retaliation. Don't Shoot Portland again fails to identify a policy or practice that caused it to be retaliated against for exercising its First Amendment rights. "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) [they] engaged in constitutionally protected activity; (2) the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Student's Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016).

Don't Shoot Portland states that it has "been participating [in] the local demonstrations and providing assistance and support to protesters." SAC, ¶ 28. It is undisputed that participating in organized political protest is protected activity. *See Black Lives Matter Seattle-King Cty. v. City of Seattle*, *Seattle Police Dep't,* No. 2:20-CV-00887-RAJ, 2020 WL 3128299, at *4 (W.D. Wash. June 12, 2020). However, "[i]n order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that 'by his actions [the City] deterred or chilled [Don't Shoot

Page  10 –     DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
PORTLAND FROM THE SECOND AMENDED COMPLAINT

Portland's] political speech and such deterrence was a substantial or motivating factor in [the City's] conduct.'" *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (alterations in the original) (quoting *Sloman v. Tadlock*, 21 F.3d 1462, 1469 (9th Cir. 1994)). Once again, unlike the other plaintiffs, Mr. Roberts, Mx. Belden, and Ms. Johnson, who have provided greater factual bases for their claims, Don't Shoot Portland's retaliation claim fails because there are no facts alleged to support its conclusory allegations that the City's actions would chill or silence a person of ordinary firmness—in this case Don't Shoot Portland—from continuing to engage in the protected activity, nor that the protected activity was a substantial motivating factor in the City's conduct. SAC, ¶¶ 28-37, 53-59.

Furthermore, the Ninth Circuit's decision in *Moss* requires that Don't Shoot Portland's claims alleging viewpoint discrimination under the First Amendment be dismissed for failure to satisfy the *Iqbal/Twombly* pleading standard. In Don't Shoot Portland's Second Claim for Relief, it alleges that the City has "a custom and practice of using militarized force against *anti-police* protesters" and that "[t]he supervisor defendants who authorized, made, and ratified the decision to attack *anti-police* demonstrators are sufficiently senior." SAC, ¶¶ 57-58 (emphasis added). The *Moss* court restated the following analysis from *Iqbal*:

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Id.* at 970 (quoting *Iqbal*, 556 U.S. at 679). The Ninth Circuit found that "[t]he bald allegation of impermissible motive on the [officers'] part, standing alone, is conclusory and is therefore not entitled to an assumption of truth." *Id.* at 970.

Here too, Don't Shoot Portland's unsupported allegations that the City engaged in viewpoint discrimination by targeting anti-police demonstrators is not sufficient and fails to plausibly allege

Page 11 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

a First Amendment claim. SAC, ¶¶ 57-58. On the facts that Don't Shoot Portland allege, the City's "use of force was intended to punish a group of protesters *en masse* for their political speech, and to deter further similar expressions of speech." SAC, ¶ 57. As discussed above, the "use of force" that plaintiffs' allege was intended to punish the group was not and could not have been used against Don't Shoot Portland—a non-profit corporation. Without factual allegations that the City took any action against Don't Shoot Portland, it cannot maintain a claim of First Amendment retaliation.

Don't Shoot Portland has failed to plead facts that plausibly suggest a colorable First Amendment claim as opposed to the "mere possibility" of such a claim under *Iqbal/Twombly*. *Id.* at 971–72. Accordingly, Don't Shoot Portland's First Amendment claim alleging municipal liability should be dismissed.

### III.    The SAC Should be Dismissed Because Don't Shoot Portland, as an Organization Suing on its Own Behalf, Lacks Article III Standing to Assert the First and Fourth Amendment Violations

Pursuant to Article III of the U.S. Constitution, federal courts may only hear cases if the plaintiffs can establish they have standing. *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011). A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008). Otherwise, the court must dismiss the claims for lack of subject matter jurisdiction under Rule 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). To establish Article III standing, a plaintiff must establish three elements:

> (1) it has suffered an "injury in fact" that is
> (a) concrete and particularized and
> (b) actual or imminent, not conjectural or hypothetical;
>
> (2) the injury is fairly traceable to the challenged action of the defendant; and

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

(3) it is likely, as opposed to merely speculative, that the injury will
be redressed by a favorable decision.

*Arizona Christian Sch.*, 563 U.S. at 134 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992)). An organization suing on its own behalf can establish the first required prong —

"injury in fact" — "when it suffered both a diversion of its resources and a frustration of its

mission." *Sierra Club v. Trump*, 963 F.3d 874, 884 (9th Cir. 2020) (citing *La Asociacion de*

*Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). The

organization is required to "show that it would have suffered some other injury if it had not

diverted resources to counteracting the problem." *Id*.

      Here too, Don't Shoot Portland offers only a conclusory allegation through a formulaic

recitation of the elements required to establish organizational standing on its own behalf by

stating, with nothing more, that "Don't Shoot Portland has devoted resources to identifying,

counteracting, and addressing the practices alleged in this complaint, and this *diversion of*

*resources* has *frustrated its mission*. As a result of the PPB's . . . unconstitutional policy,

practice, and customs, as alleged herein, Don't Shoot Portland must devote additional resources

to educating, informing, and protecting protesters from unconstitutional practices, and *this*

*diversion of resources has frustrated its mission.*" SAC, ¶ 4 (emphasis added).

      For an organization to establish injury-in-fact, and thus have standing in its own right, it

must suffer a "concrete" and "demonstrable" injury to the organization's activities— "with the

consequent drain on the organization's resources - constitu[ting] far more than simply a setback

to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363,

379, 102 S. Ct. 1114, 1124, 71 L. Ed. 2d 214 (1982) (citing *Sierra Club v. Morton*, 405 U.S., at

739, 92 S.Ct., at 1368.).  For example, in *Havens*, the nonprofit HOME sued a residential

development company, Havens Realty Corp. (Havens), under the Fair Housing Act, claiming

that Havens had engaged in unlawful racial steering. HOME described itself as a nonprofit that

pursued the goal of equal opportunity housing. In *Havens*, the Supreme Court found that HOME

Page 13 –   DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
                PORTLAND FROM THE SECOND AMENDED COMPLAINT

had organizational standing in its own right because: 1) the Fair Housing Act[6] created a broad private right of action for an "aggrieved person," who is "injured by a discriminatory housing practice (42 U.S.C. § 3602(i); 3613(a).); and 2) Haven's housing discrimination practices threatened to make it more difficult for HOME to counsel people on where they might live if the organization didn't spend money fighting it. *Id*. The *Havens* court held that the unlawful racial steering practices had "perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers," and thus, "there can be no question that the organization has suffered injury in fact." *Id. See also Sierra Club v. Trump*, 963 F.3d 874, 884 (9th Cir. 2020) (concluding that co-plaintiff SBCC had pled sufficient facts to establish a concrete and demonstrable injury from the diversion of resources it had dedicated to challenging the construction of a border wall because SBCC had provided detailed information regarding the "activities [that] have consumed the majority of SBCC staff's time, thereby interfering with SBCC's core advocacy regarding border militarization, Border Patrol law-enforcement activities, and immigration reform," stating that it had no choice because it "must take these actions in furtherance of its mission to protect and improve the quality of life in border communities."). *Id*.

In contrast, the Supreme Court in *Sierra Club v. Morton* held that Sierra Club, as an organization suing in its own right did not have standing because: 1) there was no specific statute "authorizing invocation of the judicial process" and 2) the Sierra Club did not suffer any concrete injury, but instead had a "special interest" in the dispute. 405 U.S. 727, 735, 92 S. Ct. 1361, 1366, 31 L. Ed. 2d 636 (1972) (stating where there is no private right of action, "the

---

[6] The Fair Housing Act broadly defines "aggrieved person" to include any person who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i); 3613(a). Under the Fair Housing Act, "Person" includes one or more individuals, corporations, partnerships, associations, labor organizations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11 [of the United States Code], receivers, and fiduciaries. 42 U.S.C. § 3602.

Page 14 –    DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' *Id.* (citing *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663), as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'") *Id.* (citing *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947.) *See also La Asociacion de Trabajadores de Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (explaining that in failing to assert sufficient factual allegations regarding organizational standing in its complaint, an organization cannot establish standing "by simply choosing to spend money fixing a problem that otherwise would not affect the organization at all.").

In *Sierra Club v. Morton*, Sierra Club sued to stop construction of a proposed ski resort and recreation area in a national game refuge and forest in the Sierra Nevada Mountains in contravention of federal laws, claiming that the development "would destroy or otherwise adversely affect the scenery, natural and historic objects and wildlife of the park and would impair the enjoyment of the park for future generations." In claiming that it would be "vitally affected" and "aggrieved" by defendant's acts, Sierra Club stated that "[o]ne of the principal purposes of the Sierra Club is to protect and conserve the national resources of the Sierra Nevada Mountains" and its activities and conduct were focused on the "conservation and the sound maintenance of the national parks, game refuges and forests of the country." *Id*. In holding that the Sierra Club did not have standing because it had not suffered a concrete and demonstrable injury, the Supreme Court noted:

> [I]f a 'special interest' in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived. And if any group with a bona fide 'special interest' could initiate such litigation, it is difficult to perceive why any individual citizen with the same bona fide special interest would not also be entitled to do so.

Page 15 – DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT PORTLAND FROM THE SECOND AMENDED COMPLAINT

*Id*. at 636.

Those cases are dispositive as to "injury-in-fact" in this case. Don't Shoot Portland offers no factual allegations to establish injury-in-fact. As in *Sierra Club v. Morton* and *La Asociacion de Trabajadores de Lake Forest*, Don't Shoot Portland has failed to establish standing on its own behalf because it has not suffered an organizational injury that warrants constitutional standing. At best, its inferred injury is "conjectural" and "hypothetical." Even if Don't Shoot Portland could plead facts to show some form of harm, Don't Shoot Portland would have to plead a concrete and demonstrable harm beyond merely an ideological injury—in other words, beyond having a "special interest" in the matter. Don't Shoot Portland cannot meet that burden.

Unlike in *Havens*, there is no statute granting a private right of action for Don't Shoot Portland's First and Fourth Amendment claims against the City, thus heightening the need for the pleading of facts to demonstrate "such a personal stake in the outcome of the controversy" *Sierra Club v. Morton*, at 636. Once again, Don't Shoot Portland has pled no facts to demonstrate a concrete injury—that is, a diversion of its resources and frustration of its mission— "with the consequent drain on the organization's resources - constitu[ting] far more than simply a setback to the organization's abstract social interests." *Havens*, at 379. Don't Shoot Portland mentions in its complaint the different activities it engages in, which include "a children's art and social justice council, community clothing tree, and community legal clinics." SAC, ¶ 4. Like in *Sierra Club v. Trump*, it would be helpful to understand what precisely is Don't Shoot Portland's mission, how any additional expended resources have been diverted due to the alleged constitutional violations, and how this has frustrated its mission. Instead, Don't Shoot Portland has shown that it merely has a special interest in the subject matter of this lawsuit—police use of force at crowd management events. Therefore, the SAC should be dismissed because Don't Shoot Portland fails to plead injury-in-fact and lacks standing.

///

Page  16 –   DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
PORTLAND FROM THE SECOND AMENDED COMPLAINT

IV.     **Rule 12(e) Motion for a More Definite Statement of Don't Shoot's** *Monell*
        **Claims**

Lastly, in the alternative, Don't Shoot Portland should be required to make a more
definite statement of its *Monell* claims under Rule 12(e). Specifically, Don't Shoot Portland must
separately allege a *Monell* claim based on official actions done to *it* pursuant to an official
custom and practice. The City cannot reasonably prepare a response to Don't Shoot Portland's
*Monell* claims because they are not clear in their current form. The City cannot discern what
Don't Shoot Portland's bases are for its *Monell* claims. The Ninth Circuit has recognized that
complaints such as Don't Shoot Portland's "impose unfair burdens on litigants and judges"
because both "must prepare outlines to determine who is being sued for what." *McHenry v.
Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). As a practical matter, the City is "then put at risk that
their outline differs from the judge's." *Id.* at 1180. Accordingly, the City cannot reasonably
prepare a response and should not be required to reconstruct plaintiffs' indefinite claim, and the
Court should order Don't Shoot Portland to clarify its claims.

<u>**CONCLUSION**</u>

Based on the foregoing, the City respectfully requests that this Court dismiss Don't Shoot
Portland's claims consistent with this Motion. In the alternative, the City requests that this Court
order Don't Shoot Portland to file a more definite and certain statement of its claims in a Third
Amended Complaint under Rule 12(e).

///

///

///

///

///

///

Page  17 –   DEFENDANT CITY OF PORTLAND'S MOTION TO DISMISS DON'T SHOOT
             PORTLAND FROM THE SECOND AMENDED COMPLAINT

Dated:  September 9, 2020

Respectfully submitted,


<u>/s/ J. Scott Moede</u>
J. SCOTT MOEDE, OSB 934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
NAOMI SHEFFIELD, OSB 170601
Deputy City Attorney
naomi.sheffield@portlandoregon.gov
ROBERT YAMACHIKA, OSB 065560
Senior Deputy City Attorney
rob.yamachika@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047