**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
**Viktoria Safarian**, OSB No. 175487
Email: viktoria@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241

**Juan C. Chavez**, OSB No. 136428
Email: jchavez@ojrc.info
**Brittney Plesser**, OSB No. 154030
Email: bplesser@ojrc.info
**Alex Meggitt**, OSB No. 174131
Email: ameggitt@ojrc.info
**Franz H. Bruggemeier**, OSB No. 163533
Email: fbruggemeier@ojrc.info
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208
Telephone: 503 944-2270

**J. Ashlee Albies**, OSB No. 051846
Email: ashlee@albiesstark.com
**Whitney B. Stark**, OSB No. 090350
Email: whitney@albiesstark.com
**Maya Rinta**, OSB No. 195058
Email: maya@albiesstark.com
Albies & Stark LLC
1 SW Columbia St. Suite 1850
Portland, Oregon 97204
Telephone: (503) 308-4770

**Attorneys for Plaintiffs**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DON'T SHOOT PORTLAND, et al., | ) |
| | ) Case No. 3:20-cv-00917-HZ |
| Plaintiffs | ) |
| | ) **PLAINTIFFS' REPLY IN SUPPORT OF** |
| v. | ) **AMENDED MOTION FOR FINDING OF** |
| | ) **CONTEMPT AND FOR SANCTIONS** |
| CITY OF PORTLAND, a municipal | ) **AGAINST DEFENDANT CITY OF** |
| corporation, and MULTNOMAH COUNTY, | ) **PORTLAND** |
| a political subdivision of the State, | ) |
| | ) |
| Defendants. | ) **Oral Argument Requested** |
| | ) |
| | ) |

The City of Portland ("City") raises three specific arguments in response to plaintiffs'

motion for contempt:

1. That the individual incidents described in the motion are not violations of the order;

2. That even if the individual incidents described are violations of the order, the Court

   should not hold the City in contempt because they made "all reasonable steps" under

   *Dual-Deck*;

3. That plaintiffs' suggested remedies for the contempt are inappropriate.

The City is wrong on each point. First, the City's own submitted evidence demonstrates that its

police bureau, as a matter of practice, is using impact weapons and other force against persons

engaged in only passive resistance, or no resistance at all, in clear violation of this Court's order.

Second, it is the City's burden to prove the defense of "all reasonable steps" in order for that

defense to be available to them. They have not even attempted to do so; describing only one step

they took. In any case, as explained in plaintiffs' motion, the defense is not even available to

them because they have not been in substantial compliance with the order at any time. Finally,

an appropriate remedy is for this Court to decide. Plaintiffs merely made suggestions without

knowing how the City would defend its actions, which necessarily impacts the appropriate

remedial sanction. However, based on the City's defense of its actions, each of the suggested

remedies would be well within the Court's discretion to impose.

I.     **The City Violated The Order**

The City makes two main arguments in support of its claim that plaintiffs have not

proved any violations of the order. First, it makes several arguments suggesting that the

declarant victims of police violence cannot be sure they were injured by members of the

Portland Police Bureau and not Oregon State Troopers or other protesters. Second, it argues that,

when the police launch munitions at people engaged in passive resistance or no resistance, any

effort that people make to defend themselves against those unlawful assaults is "active

aggression" thus justifying the use of more force. Therefore, according to defendants, if

someone moves along with or too slowly in front of a moving police line or tries to stand their

ground in the face of police shoving them and jabbing them with batons, this justifies OC spray

or FN303 rounds; or if someone kicks a smoke canister away from themselves or their families

(or even simply bends down to get a closer look at a munition), this justifies shooting that person

with  impact rounds from a 40 mm launcher. Relatedly, the City also argues that "a motion for

contempt is not the forum for plaintiffs to seek redress for alleged Fourth Amendment

violations." Response, at 2. The Fourth Amendment standard, however is highly relevant to

whether the City has acted in contempt of this court's order because the order restricts the uses

Page 3          PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING
                OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF
                PORTLAND

impact weapons, RBDDs, and aerosol restraints, incorporates PPB Use of Force Directive 1010, which incorporates the Graham Fourth Amendment objective reasonable force standard, which is referred to throughout the directive.

A.   The City Is Responsible For The Violations

The City argues that they cannot be held in contempt if plaintiffs cannot say with certainty that it was a PPB officer and not an OSP trooper that violated the order. Response, at 12. That is not the case. Rule 65 binds not just parties to the Court's order (under Fed. R. Civ. P. 65(d)(2)(A), but also:

> (B) the parties' officers, agents, servants, employees, and attorneys; and
> (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d)(2). On June 30, the OSP troopers were acting both as the City of Portland's agent under Rule 65(d)(2)(B) and in active concert or participation with the City of Portland under Rule 65(d)(2)(C). *See, e.g.*, Dkt. 171-1 Exhibit H to Decl. of Naomi Sheffield, at pdf page 4, ("MRT was deployed to assist the Portland Police Bureau (PPB),"), and at 5 ("we integrated with [PPB's] line formation," "we rejoined PPB's east bound line on N Lombard St.") If OSP troopers violated the order, they can be held in contempt. Moreover, as the Ninth Circuit explained in *Inst. Of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935 (9th Cir. 2014), the party itself can be liable in contempt for the actions of a non-party when it gives "a non-party the means to violate an injunction, if the party knows it is highly likely the non-party will use those means to violate the injunction."

According to every OSP trooper on which the City relies, the troopers were involved in the policing of the protest on June 30 "to assist PPB". Dkt. No. 171-1, Ex. H, at 2, 6, 10, 13, 15, 20, 22, 25, 27, 29, 30, 33, 34, 36, 38, 40, 43. The incident commander for PPB for that night,

Page 4        PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING
              OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF
              PORTLAND

Anthony Passadore, was in command of all the officers, directing both their movements and which weapons were authorized. *See* Dkt. No. 111, at ¶ 50, 52, 55, 56. In that situation, the City is as responsible for the conduct of the OSP troopers as it is for its own employees.

Moreover, with the exception of the force used against Vince Epker, it is clear from the video evidence and the declarations of the officers that the force in each situation was used by PPB officers, not OSP troopers.

With particular reference to declarant Vince Epker, the City claims that "None of the uses of force described around this time, appear consistent with Declarant Epker's description. With this amount of information, the City is not certain whether Mr. Epker was struck by something deployed by an officer or whether he was struck by one of the many objects thrown by protesters." Mr. Epker is certain, and anyone applying logic and reason will be as well. First, the City bases its semi-denial on the fact that none of its employees specifically remember deploying a munition which may have struck Mr. Epker. That's not surprising given the sheer volume of munitions deployed by their employees that night. For example, Officer Haase states that he deployed four 40 mm rounds, but only describes one of them with any degree of specificity. Dkt. No. 162. Officer Taylor describes deploying dozens of FN303 rounds with only the vaguest descriptions of who was targeted and why. Dkt. No. 172. Mr. Epker has a much clearer memory, for obvious reasons. He states, in no uncertain terms:

> Police shot me in the face with an impact munition while I was backing away
> from them with my hands in the air, holding my phone. This happened as they
> were pushing the protesters east, after they pushed us past the I-5 overpass. As far
> as I know, I was obeying their orders. I do not know what the munition was. It cut
> a chunk out of my cheek. I was 10 to 15 feet from the officers at the time they
> shot me. I could not see the officer that shot me, because the officers were
> standing in front of police vehicles with bright lights on, aimed toward the
> protesters. I was walking backwards because I certainly wasn't turning my back
> on them. They definitely weren't aiming toward the ground when they fired.

Page 5         PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING
               OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF
               PORTLAND

Dkt. No. 149, ¶ 7. It is important to note that this incident would be a violation of the order even if Mr. Epker were engaging in active aggression. Under PPB Directive 6.4.2.1.5, officers are required to target the legs when within seven yards and are prohibited from targeting the head. *See* Dkt. No. 145-1, at 11. There is no justification for this use of force, which is why the City is trying to claim ignorance.

      B.  Passive Resistance

          *1.  Refusing To Move Or Walking "Too Slow" Is Passive Resistance At Best*

      This court's order provides that OC spray "shall not be used against persons engaged in passive resistance, and consistent with PPB Use of Force Directive 1010, members shall minimize exposure to non-targeted persons." Dkt. 43. Passive resistance "means a person's non-cooperation with a member that does not involve violence or other active conduct by the individual." *Id*.

      Defendants argue that the use of OC spray against Mr. Cleinman was not a violation of this court's order, including the Use of Force Directive 1010, when he "grab[bed] the baton of the first officer who shoved him," then immediately thereafter "[a] second officer pushes him so that he keeps moving,"  and then Mr. Cleinman "turns [his face] back to the police line" and immediately gets sprayed in the face with OC spray. *See* Response, at 10 and Cleinman Ex 1 at 00:05-00:012.  Defendants describe Declarant Cleinman as engaged not in passive resistance but in "active conduct with the officers on the line immediately prior to the use of OC spray." Response, at 12.

      According to defendants, therefore, if a person seemingly does any "action" at all, including simply putting a hand up to protect themselves from being shoved with a baton while following a police order, or does nothing when he is shoved by a second officer, and then turns

       PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

his face to look at police, it is acceptable under this court's order and is an objectively reasonable use of force to spray that person in the face with OC spray.  It appears from his declaration and the video evidence that Declarant Cleinman was not engaged in even passive resistance when he was first shoved; he was in front of the police line and moving backwards. *See* Amended Declaration of Matthew Cleinman Dkt 150, at ¶ 6 ("I was moving backward with the crowd" two officers shoved him and he "kept backing away" when a "third officer came up to me and pepper sprayed me in the face");  Cleinman Ex 1 at 00:06.  He was, after the second shove, well away from the police line, was not resisting the police line movement, had not stopped his movement in the direction in which police told him to move, and had most of his body turned away from the police line and looked over his shoulder at the officer who sprayed him with OC.  Cleinman Decl at ¶ 6;  Cleinman Ex 1 at 00:09. He was not engaged in passive resistance and was cooperating with the police line movement of the crowd. More fundamentally, however, force may only be used against persons who are subject to a lawful seizure and then also resist more than passively the lawful seizure.  Declarant Cleinman was walking in front of a police line, following the orders of police.  Police were not engaged in arresting or detaining him, and the police did not use force against him to effect a lawful seizure; he was simply attacked by three police officers.

The force used against Declarant Cleinman is consistent with other force used against people engaged in passive resistance, according to the declarations submitted by the City. For example, Officer Middleton describes hitting people with his baton and shoving them to the ground for refusing to move when ordered to move. *See* Dkt. No. 168. Similarly, Officer Taylor describes shoving someone who refused to move. *See* Dkt. No. 172, ¶ 6. While the City is correct that many of these uses of force are not, in and of themselves, violations of the order, they do

Page 7        PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING
              OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF
              PORTLAND

help to illuminate that the City is routinely using force against people who are engaged in passive resistance.

### 2. *"Active Aggression"Justifying Use of Impact Weapons*

The City also argues that it is acceptable under this court's order to shoot people with impact weapons, which requires "active aggression" under Directive 1010, who a) do not immediately allow police to steal and destroy their sign expressing their viewpoint that police should be defunded because they were "blocking" officers; or b) kick a smoking canister on the ground away from themselves; or c) even look at a munition on the ground.  This is not a reasonable interpretation of "active aggression." Active aggression is defined as "a threat or overt act of an assault (through physical or verbal means), coupled with the present ability to carry out the threat or assault, which reasonably indicates that an assault or injury to any person is about to happen, unless intervention occurs."

Defendants contend that none of the descriptions of police uses of force in Plaintiffs' Motion demonstrate violations of this court's order and, therefore, each instance of PPB using impact munitions occurred in response to active aggression. One such example occurred within the first minute or so of the initial police line push east, right after Declarant Cleinman was sprayed with OC.  As the banner carriers are moving backwards with the police line, Dicks Ex 4; Cleinman Ex 1 at 00:13-00:25, an officer uses an overhand strike to the arm of a one of the people carrying a large banner, *id*. at 00:25, as officers begin ripping the large banner away from the four or so people carrying it, *id*. at 00:25-00:39. Immediately after the overhand baton strike, an officer fires multiple FN303 impact rounds at the people who were holding the banner but had released it and backed away from the banner and officers after the baton strike.  *Id*. at 00:27-

Page 8      PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

00:28. Officers then tear the banner away from the protesters while some protesters attempt to retain their property against the theft by police.  *Id*. at 00:27-00:33. Seconds later, an officer again shoots FN303 impact munitions at protesters who are backing away from the police line, including one person on roller skates who had been in between the banner and the police line, who was knocked into the police and knocked down when the police tore the banner away from the protesters, and who was then on their knees with their back to police when the FN303s were fired.  *Id*. at 00:18.

Defendants' Response characterizes the banner carriers as "individuals holding a large sign, refusing to disperse, blocking the police line from moving, and struggling against the police line." Response, at 13. The evidence shows, however, that the banner carriers were moving back with the police line until the officers stop them by attacking the protesters and attempting to steal and destroy their banner. Cleinman Ex 1 at 00:20-00:35. More importantly, it is clear is that, in both instances, police shot the FN303 impact munitions at people who were backing away from police and who were not making an overt threat that reasonably indicated that they were about to engage in an assault unless intervention occurred.  Therefore, impact munitions could not be used under this Court's order because they were not used to stop a threat of injury or assault and effect an arrest of those persons. The City's explanation reeks of a post-hoc rationalization for the police's use of violence to suppress speech.

The City states, without further analysis, that kicking a smoke canister back away from the crowd of protesters and in the general direction of the police line is "active aggression." *Response*, at 12. This is a remarkably hypocritical argument. The City does not attempt to argue that either Declarant Haas or Cordero were doing anything to justify the use of smoke grenades

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

on them. Indeed, the videos make clear that they, along with most of the rest of the crowd, were complying with police commands to "move east." Nevertheless, the police used smoke grenades on them, an act which the City now apparently claims is an assault. Otherwise, kicking it back is not an act of "active aggression." In other words, the City wants to have it both ways. When the police use smoke grenades on people who have not engaged in any resistance, that use of force is not great enough to warrant any discussion or justification. However, when the people kick it back, that is dangerous assaultive conduct warranting the use of impact weapons.

Even more egregious is the targeted violence police used against Declarant Greatwood. Declarant Greatwood, who films the protests and does not engage in any violent, aggressive, or destructive actions, was shot in the penis with a 40mm launcher while he bent down to examine the inert munition that had just rolled towards him. Amended Declaration of Eric Greatwood, Dkt 148, at ¶ 9. He had not even picked it up, and certainly had not made any motion to throw it at anyone. Defendants' motion makes no attempt to explain how Declarant Greatwood's actions would warrant PPB to shoot him in the groin under any standard, including this Court's order. The Response mentions the shooting only by stating that "Greatwood was struck with an impact munition when he walked toward a deployed munition that had been thrown by the police and bent down to examine it" in the section where defendants state that no violation of this Court's order had occurred on June 30. *See* Response, at 12.

Beyond the specific violations described here, the Court should be concerned with the seeming lack of any understanding of the lawful objectives for uses of force which is displayed by the declarations submitted by the City. Officer after officer describes using force for what can only be described as extrajudicial punishment. For example, Officer Bianchini describes seeing a person throw a bottle at police, and shooting him with a 40 mm round in response. Dkt. No. 159,

Page 10        PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

at ¶ 8. The person ran off, never to be seen again, which Officer Bianchini describes as an "effective" deployment. *Id*; *see also id.* at ¶ 15, 17. Officer Taylor is less specific, which ultimately shows the pattern more directly. "I deployed my FN303 at three or four individuals who were throwing objects. These rounds were only deployed in direct response to an individual target engaged in active aggression to stop them from throwing items or engaging dangerously with officer." Dkt. No. 172, at ¶ 5. Force is not being used in these incidents to effect some lawful objective—it is being used in the manner of a schoolyard fight. The "grenadiers" as simply waiting for any excuse to fire their weapons, without regard to any lawful objective.

## II.    Defenses to Civil Contempt

The City completely ignores the application of burden shifting in a contempt action. Plaintiff bears the initial burden of showing by clear and convincing evidence that defendant violated a specific and definite order of this Court. *See Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). However, once that burden is met, the burden shifts to defendant to show that they have taken all reasonable steps to avoid violating that order. *Id*. Only where a defendant has been in substantial compliance with a court order is the defense of "all reasonable steps" even available. *In re Dual Deck*, 10 F.3d at 695. The City never acknowledges that, in order to take advantage of this, the only defense to civil contempt, it is the City's burden to prove the defense. Consequently, the City never attempts to meet its burden and the defense is unavailable to them.

The only evidence the City points to is the fact that the incident commander read the order over the radio and various police officers claim familiarity with the order. Of course, if this Court concludes that those same police officers actually violated the order, the City's evidence only helps to prove that the violations are more egregious. The City's efforts are not

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

even close to meeting the standard for "all reasonable steps." Indeed, making sure that its employees who are subject to the order have heard the contents of the order is, one would hope, the bare minimum anyone would do. Proving that it took some steps does not mean that it took *all* reasonable steps. *See Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016). Where a contemnor seeks to take advantage of this defense, it must prove that it took every reasonable step available to it in order to avoid violating the order. *Id*. It must do "categorically and in detail." *N.L.R.B. v. Trans Ocean Exp. Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973). The City has not attempted to do so here.

Even if they had taken every reasonable step available to them to avoid violating the order, the defense would still be unavailable to them because, at the time they violated the order, they had not been in substantial compliance. *In re Dual Deck*, 10 F.3d at 695. The City claims that plaintiffs have only pointed to a handful of incidents over the course of two months, but ignores that the order at issue was only in place for three days at the time of the violations. This argument is also an artful attempt at burden shifting. If the City wants to take advantage of this defense, it needs to prove substantial compliance; saying they were in substantial compliance is not the same as proving it.

The City's attempt to claim refuge in this defense is also completely undermined by the remainder of their arguments. Conceptually, this defense functions as an affirmative defense—it is logically inapplicable where the entity at issue is claiming that they did not violate the order. It is the logical equivalent of arguing, "I did not shoot that person, and even if I did, it was self-defense." The Court should reject this logic. If it concludes that the City violated the order, it should find them in contempt and impose an appropriate remedial sanction.

Page 12        PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

### III.    <u>Remedy</u>

Despite the City's argument, plaintiffs did not make a specific request for a particular remedy in their motion. Rather, plaintiffs "suggested" that some options "should be considered by the Court." Dkt. No. 145, at 3. Plaintiffs request, then and now, is that this Court craft a remedial sanction that is designed to prevent future violations of the Court's order. An appropriate remedy necessarily depends upon the defense: if the defense claims a lack of understanding of the order, making a more definite and stricter order is reasonable; if the defense claims that it is merely the actions of a few bad actors, removing those bad actors from the situation is reasonable. The City claims both and more. It claims that the order is not definite enough, that it did not violate the order, and that even if it did violate the order, that was just a few errant examples. As a result, all of plaintiffs' suggestions would be well within the discretion of this Court to impose. Ultimately, plaintiffs defer to the Court in the imposition of the appropriate sanction, so long as that sanction is reasonably calculated to prevent future violations.

**DATED** this 18th day of September 2020,

<div style="margin-left:40%;">

*s/Jesse Merrithew_____*

**Jesse Merrithew**, OSB No. 074564
**Viktoria Safarian**, OSB No. 175487
Levi Merrithew Horst PC

**J. Ashlee Albies**, OSB No. 051846
**Whitney B. Stark**, OSB No. 090350
**Maya Rinta**, OSB No. 195058
Albies & Stark LLC

**Juan C. Chavez**, OSB No. 36428

</div>

Page 13          PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF PORTLAND

**Brittney Plesser**, OSB No. 154030
**Alex Meggitt**, OSB No. 174131
**Franz H. Bruggemeier**, OSB No. 163533
Oregon Justice Resource Center

**Attorneys for Plaintiffs**

PLAINTIFFS' REPLY IN SUPPORT OF AMENDED MOTION FOR FINDING
        OF CONTEMPT AND FOR SANCTIONS AGAINST DEFENDANT CITY OF
        PORTLAND