J. SCOTT MOEDE, OSB #934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
NAOMI SHEFFIELD, OSB #170601
Senior Deputy City Attorney
naomi.sheffield@portlandoregon.gov
ROBERT YAMACHIKA, OSB #065560
Senior Deputy City Attorney
rob.yamachika@portlandoregon.gov
Portland City Attorney's Office
1221 SW 4th Ave., Rm. 430
Portland, OR 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
*Of Attorneys for Defendant City of Portland*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| DON'T SHOOT PORTLAND, a nonprofit corporation, in its individual capacity, NICHOLAS J. ROBERTS, in an individual capacity and on behalf of themselves and all others similarly situated, MICHELLE "MISHA" BELDEN, in an individual capacity and on behalf of themselves and all others similarly situated, ALEXANDRA JOHNSON, in an individual capacity and on behalf of themselves and all others similarly situated,<br><br>**PLAINTIFFS,**<br><br>v.<br><br>CITY OF PORTLAND, a municipal corporation**,** and MULTNOMAH COUNTY, a political subdivision of the State,<br><br>**DEFENDANTS.** | 3:20-cv-00917-HZ<br><br>**JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER** |

Pursuant with this Court's Order (Dkt. 206), counsel for the City of Portland and Counsel

for Plaintiffs exchanged remedy proposals to address this Court's Contempt Order (Dkt. 204) on

Page 1 – JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

December 11, 2020. Counsel for these parties have subsequently conferred regarding the proposed remedies. The following joint proposal outlines the agreed-upon legal standards, the City's remedy proposals, and Plaintiffs' remedy proposals.

**I.    Legal Standard**

"Civil contempt sanctions, by contrast [to criminal contempt sanctions], are employed for two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992). Civil sanctions are "wholly remedial," not punitive. *Id.* And "[g]enerally, the minimum sanction necessary to obtain compliance is to be imposed." Because the sanctions are designed to coerce compliance, they are conditional. "If a sanction operates whether or not a party remains in violation of the court order, it does not coerce compliance." *Id.* Because civil sanctions are conditional, the contemnor must be able to complete its sanction, and "purge itself of the contempt." *Id.*; *see also Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) ("[T]he ability to purge is perhaps the most definitive characteristic of civil contempt."); *Turner v. Rogers*, 564 U.S. 431, 442 (2011) ("And once a civil contemnor complies with the underlying order, he is purged of the contempt and is free."); *United States v. Ayres*, 166 F.3d 991, 997 (9th Cir. 1999) ("Civil contempt sanctions, however, are only appropriate where the contemnor is able to purge the contempt by his own affirmative act and 'carries the keys of his prison in his own pocket.'").

Federal courts have broad remedial powers to address noncompliance with a restraining order. *Stone v. City and County of San Francisco*, 968 F.2d 850, 861-62 (9th Cir. 1992) (affirming court's power to authorize sheriff to override state law); *See also, e.g., Brown v.*

Page  2  –    JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

*Plata*, 563 U.S. 493 (2011) (imposing prison population limit); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536 (9th Cir. 1987) (affirming appointment of a Special Master). When the least intrusive measures fail to rectify the problems, more intrusive measures are justifiable. *Stone*, 968 F.2d at 861 (citing *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978)).

**II.     City's Proposed Remedies**

The City proposes that the Court order the City take the following actions to remediate the violations raised by the Court's Order of civil contempt with respect to three uses of an FN303 on June 30, 2020 (Dkt. 204). Plaintiffs have reviewed and agreed to these remedial measures.

- On December 4, 2020, all Rapid Response Team grenadiers and supervisors (other than those on sick/vacation leave) received nine hours of training. At this training, representatives from the City Attorney's Office reviewed with the Rapid Response Team grenadiers and supervisors the limitations on their use of force at protest. This review included review of the less lethal temporary restraining order, the requirements in PPB Directive 1010 regarding the use of force, this Court's Order of civil contempt, and the video evidence of the incidents discussed in the Court's Order.

- The Internal Affairs Division of PPB or Independent Police Review in the Office of the Auditor will investigate the allegations of misconduct by Brent Taylor from June 30, 2020. Pending the resolution of this investigation, PPB will remove Brent Taylor from policing crowd management/crowd control events.

/ / /

Page  3  –     JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

- PPB will recirculate, through the learning management system, copies of this Court's Order and the less lethal order and require all PPB members certify that they have read and understand each. Members will be invited to ask the City Attorney's Office any questions regarding these documents.

- By December 31, 2021, the City will ensure that all sworn PPB members complete a 3-hour training regarding the use of force at protests. This training will include video, examples, and scenarios from the protests this summer both in Portland and around the country to assist officers in understanding how Directive 1010 applies, including consideration of the defined terms passive resistance, physical resistance, and active aggression.

### III.    Plaintiffs' Proposed Remedies

Judge Hernandez found the City in contempt in three particular instances that occurred June 30, 2020. The Court found that two of these three instances involved the conduct Officer Brent Taylor deploying multiple rounds from his FN303 weapon against persons not exhibiting active aggression. (Dkt. 204, p. 16 (discussing Incidents 2 and 3)). The evidence appears to show that Officer Taylor was also responsible for the third instance of contempt in which an officer shot a person multiple times with an FN303 when the person slowly walked to an object on the ground and bent down to pick it up. (*See* Ex. L at around 9:25). Plaintiffs propose the following additional remedies. The City opposes these additional remedies as indicated in italics below.

A.    <u>A complete ban on the use of automatic and semi-automatic impact weapons for crowd control deployments, including the FN303.</u>

Rapid fire of impact weapons is inconsistent with PPB's constitutional obligation to insure that every use of force is independently justified under *Graham*. These impact weapons,

especially FN303s, appear to primarily be used by PPB as punishment for perceived crimes or potential, but unrealized, risk. Each round fired from impact weapons like FN303s is potentially lethal. *See attached* Reports regarding use of Kinetic Impact Projectiles.[1] Projectiles fired from FN303s have killed and seriously injured people.[2] Boston Police killed a person with a FN303.[3] Following this, the City of Boston banned the weapon.[4] Plaintiff Alexandra Johnson's hand was broken by what was likely a FN303. The City of Seattle has also banned kinetic impact projectiles, as well as tear gas, blast balls, and some uses of pepper spray.[5]

While other impact weapons are also quite dangerous, plaintiffs believe it is not a coincidence that each of the violations found by the Court was the result of an FN303. Officer Taylor testified he fired his weapon over 40 times on the evening of June 30, 2020. He was only one of several officers using a rapid fire impact weapon that evening, and every evening during the 100+ deployments of the RRT squads over the summer. That is thousands of rounds fired into crowds of people, each one capable of causing death or serious physical injury. Officer

---

[1] Haar RJ, Iacopino V, Ranadive N, et al., *Death, injury and disability from kinetic impact projectiles in crowd-control settings: a systematic review*, BMJ Open (2017) (summary of studies regarding deaths and injuries from kinetic impact projectiles); Physicians for Human Rights, *Shot in the Head*, PHR (September 2020) (summary of 2020 protest events in the United States, including Portland, OR, where individuals were injured by kinetic impact projectiles fired at human heads); Physicians for Human Rights, *Kinetic Impact Weapons*, PHR (summary of policy recommendations for the banning of kinetic impact weapons in the crowd control context).
[2] Haar, et. al., *supra*, at p. 4.
[3] Ally Jarmanning, *Cops Across U.S. Are Using 'Less-Lethal' Weapons. In Boston In 2004, A Woman Was Killed With One*, WBUR (June 10, 2020), available at https://www.wbur.org/news/2020/06/10/rubber-bullets-protesters-victoria-snelgrove-boston .
[4] *Id.*
[5] Gene Johnson, *Seattle council bans police use of crowd control weapons*, AP News (June 15, 2020), available at https://apnews.com/article/37bdfaa2871617205e2f739e168ca70e; City of Seattle, Ordinance 126102, June 26, 2020, available at http://seattle.legistar.com/View.ashx?M=F&ID=8656981&GUID=8C1C2C66-AB23-4984-A059-CF0E6D1D9DCB; Codified as Seattle Municipal Code 3.28.146 available at https://library.municode.com/wa/seattle/codes/municipal_code?nodeId=TIT3AD_SUBTITLE_IIDEOF_CH3.28PODE_SUBCHAPTER_IPODERE_3.28.146PRUSCRCOWE

Page  5  –    JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Taylor testified to his capacity to properly assess the constitutional validity before each use of his rapid-fire weapon. Judge Hernandez found this incredulous. (Dkt. 204, p. 17-18). Any thinking person would. It is simply not possible to reassess the threat posed by a subject when there is no time in between the pulls of the trigger. The simplest way to solve this problem is to remove the ability to fire impact munitions at that rapid rate. In the context of an impact weapon, there is simply no constitutionally sound justification for hitting a person 3-5 times within a couple seconds instead of once.

*City's Response*: *This request is based on Plaintiffs' conclusions, not the conclusions of this Court. This Court's contempt order was based on its conclusion that on three occasions on June 30, 2020, impact munitions were used against individuals who were not engaged in active aggression, inconsistent with Directive 1010. (Dkt. 16-18). This Court did not find that any use of the FN303 is inconsistent with Graham. In fact, the Court specifically found that the use of the FN303 against Mr. Greatwood was consistent with Directive 1010. Similarly, the Court did not conclude that PPB primarily used the FN303 to punish protestors for perceived crimes or unrealized risks, nor did the Court engage in any analysis regarding the use of the FN303 on other nights or by officers other than Officer Taylor. Likewise, Plaintiffs' citation to policy decisions by other cities and allegations from Plaintiff Johnson are not relevant to the steps necessary to remedy the contempt that this Court found by PPB on June 30. Additionally, this proposed remedy "operates whether or not a party remains in violation of the court order," which "does not coerce compliance," as required for civil contempt remedies. Whittaker Corp., 953 F.2d at 517.*

///

      B.    <u>Prohibit any individual PPB member who violates the Court's order from participating in any future crowd control operations.</u>

Each of the violations found by the Court was committed by Officer Taylor. Ordering that he be removed from future crowd control operations is a reasonable, interim step. The Court should make clear that any future violators will also be removed from crowd control operations.

*City's Response*: *This request appears to be prospective rather than remedial, as it relates to "any individual PPB member who violates the Court's order," even though Plaintiffs have stated that the only officer that this Court found violated the order was Officer Taylor. Even as limited to Officer Taylor, this request is not remedial, as it provides no opportunity for him to purge the alleged contempt or to come into compliance in the future. Whittaker Corp., 953 F.2d at 517 ("Unlike the punitive nature of criminal sanctions, civil sanctions are wholly remedial."). This is inconsistent with the requirements of civil contempt, and it is particularly troubling because Officer Taylor was not a party to the contempt motion, and he therefore did not have personal representation in the proceeding. This remedy could similarly implicate the collective bargaining agreement and interfere with the City's procedures for investigating misconduct and administering discipline and corrective action when appropriate.*

      C.    <u>Establish an expedited review process for reviewing any future violations.</u>

As part of the Court's ongoing authority to enforce its own orders, it should establish an expedited process for reviewing any future allegations of violations. In the event the Court finds any violation, it should impose a pre-determined, escalating coercive fine upon the City. It should also order the removal of the offending officer(s) from crowd control operations. The expedited system should include the following features:

Page 7 –   JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

- The ability of plaintiffs to raise a claimed violation with defendants which would require efendants to respond within 48 hours by providing all documentation, photographs, and video within defendants' possession relative to the claimed violation. This must include any evidence the defendants want the court to consider.

- If Plaintiffs believe after reviewing all materials that a violation has occurred, they may forward all evidence to the Court for an expedited and summary review of the evidence to determine whether a violation has occurred. Along with the evidence, Plaintiffs may provide a short (no more than 2 pages for each claimed violation) explanation regarding the specific way in which the order was violated. Defendants may provide a response of similar limitation within 48 hours of plaintiffs' filing.

- If the Court determines that a violation has occurred, it shall impose a coercive, escalating fine based on a schedule determined by the Court, and order that the involved officer be removed from all protest related policing assignments immediately.

Effective monitoring of misconduct requires that, when noncompliance occurs, the response needs to be swift, certain, and proportional. It is only in systems where these principles are honored that deterrence can be achieved. This proposal conforms to these principles moving forward to deter future violations.

*City's Response: This request similarly attempts to address possible future violations by modifying the injunction, rather than addressing the issue that gave rise to the Court's contempt*

Page 8 –    JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

order. See *Ayres, 166 F.3d at 997* ("contempt sanctions . . . are only appropriate where the contemnor is able to purge the contempt by his own affirmative act" and it "cannot be contingent upon the acquiescence of an opposing party because such an arrangement effectively renders the contempt punitive, rather than civil") At no time during the contempt proceeding did Plaintiffs indicate that documents or videos requested from the City were not timely provided. Plaintiffs did not request expedited briefing of their show cause motion. In fact, Plaintiffs did not file their amended motion until August 12, 2020—over a month after the alleged violations on June 30, 2020. Nonetheless Plaintiffs propose an expedited schedule that gives them unlimited time to evaluate and file motions related to alleged violations of this Court's restraining orders but requires the City to respond in only 48-hours. This remedy is both unreasonable and unrelated to the Court's finding of contempt.

**DATED** this 18th day of December, 2020

s/Jesse Merrithew

**Jesse Merrithew**, OSB No. 074564
**Viktoria Safarian**, OSB No. 175487
Levi Merrithew Horst PC

**J. Ashlee Albies**, OSB No. 051846
**Whitney B. Stark**, OSB No. 090350
**Maya Rinta**, OSB No. 195058
Albies & Stark LLC

**Juan C. Chavez**, OSB No. 36428
**Brittney Plesser**, OSB No. 154030
**Alex Meggitt**, OSB No. 174131
**Franz H. Bruggemeier**, OSB No. 163533
Oregon Justice Resource Center

**Attorneys for Plaintiffs**

s/Naomi Sheffield

**J. Scott Moede**, OSB No. 934816
**Naomi Sheffield**, OSB No. 170601
**Robert Yamachika**, OSB No. 065560

**Attorneys for the City of Portland**

Page 9 – JOINT PROPOSAL OF REMEDIES IN RESPONSE TO CONTEMPT ORDER

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047