IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DON'T SHOOT PORTLAND, a nonprofit
corporation, in its individual capacity;
NICHOLAS J. ROBERTS, in an individual
capacity and on behalf of themselves and all
others similarly situated; MICHELLE
"MISHA" BELDEN, in an individual capacity
and on behalf of themselves and all others
similarly situated; ALEXANDRA
JOHNSON, in an individual capacity and on
behalf of themselves and all others similarly
situated; THOMAS DREIER, in an individual
capacity and on behalf of themselves and all
other similarly situated; and LESTER
WRECKSIE, in an individual capacity and on
behalf of themselves and all others similarly
situated,

                    Plaintiffs,

     v.

CITY OF PORTLAND, a municipal
corporation,

                    Defendant.

No. 3:20-cv-00917-HZ

OPINION & ORDER

Jesse Merrithew
Viktoria Lo
LEVI MERRITHEW HORST PC
610 SW Alder Street, Suite 415
Portland, OR 97205

Juan Chavez
Alexander Meggitt
Franz H. Bruggemeier
OREGON JUSTICE RESOURCE CENTER
PO Box 5248
Portland, OR 97208

J. Ashlee Albies
Whitney B. Stark
Maya Rinta
ALBIES & STARK LLC
1 SW Columbia Street, Suite 1850
Portland, OR 97204

       Attorneys for Plaintiffs

J. Scott Moede
Naomi Sheffield
Robert T. Yamachika
PORTLAND CITY ATTORNEY'S OFFICE
1221 SW Fourth Avenue, Room 430
Portland, OR 97204

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiffs Don't Shoot Portland, Nicholas Roberts, Michelle "Misha" Belden, Alexandra

Johnson, Lester Wrecksie, and Thomas Drier brought this case against Defendant City of

Portland, alleging that Defendant violated the First and Fourth Amendments through the Portland

Police Bureau's use of less lethal force during the 2020 Portland protests. Compl., ECF 1; Fourth

Am. Compl. ("FAC"), ECF 186. In November 2022, Plaintiffs accepted an offer of judgment,

and Judgment was entered on January 20, 2023.

       Pursuant to the terms of the Judgment, Plaintiffs filed a motion for attorney fees and

costs, seeking $1,057,861.50 in fees and $259,886.20 in costs. Pls.' Mot., ECF 325. For the

reasons explained below, Plaintiffs' motion is granted in part. Plaintiffs are awarded $699,629.02

in fees and $84,697.20 in costs.

2 – OPINION & ORDER

**DISCUSSION**

I.      **Attorney's Fees**

Pursuant to the terms of the Offer of Judgment, Plaintiffs are entitled to reasonable,

"legally recoverable" attorneys' fees incurred up until November 15, 2022. Offer of J., ECF 318-

1. "The Ninth Circuit has held the 'lodestar' method should be used to calculate a reasonable

attorney fees award when a Rule 68 Offer of Judgment provides for such award." *Langvin v. City*

*of Portland*, No. 3:21-CV-01595-HZ, 2022 WL 4592550, at *2 (D. Or. Sept. 30, 2022) (citation

and quotation omitted). First, the court multiplies the number of hours the prevailing party

reasonably expended on the litigation times a reasonable hourly rate, in order to determine the

"lodestar" amount. *Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996). If

circumstances warrant, the court then adjusts the lodestar to account for the *Kerr* factors not

subsumed within the initial lodestar calculation.[1] *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*,

526 F.2d 67, 70 (9th Cir. 1975)). A "strong presumption" exists that the lodestar figure

represents a "reasonable fee," and therefore, it should only be enhanced or reduced in "rare and

exceptional cases." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S.

546, 565 (1986).

        A.      Reasonable Hourly Rate

The parties dispute the rates that Plaintiffs' attorneys should recover. Specifically,

Defendant objects to the requested rates, arguing (1) a rate at 75% of the Oregon State Bar

Economic Survey—as opposed to the requested rates that are above the 90th percentile—is

---

[1] Factors subsumed within the lodestar include the novelty and complexity of the issues, special
skill and experience of counsel, quality of the representation, results obtained, and the superior
performance of counsel. *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1383 (9th Cir.
1990).

appropriate and (2) Plaintiffs' counsel should recover fees at historic—as opposed to current—rates. Def. Obj., ECF 342. While the Court agrees with Defendant that a lower rate is appropriate for the attorneys in this case given their reputation, skill, and complexity of the issues presented, it will allow Plaintiffs to recover at the current rate instead of the historic rates given the demands of this case and the delay in payment.

                i.      Current Versus Historic Rates

"[D]istrict Courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and the loss of use of these funds." *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992) ("[A]n adjustment for delay in payment is an appropriate factor in determining what constitutes a reasonable attorneys' fee under § 1988 and . . . 'an appropriate adjustment for delay in payment—whether by application of current rather than historic rates or otherwise—is within contemplation of the statue.'")(quoting *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 283–84 (1989)).

Here, the Court finds that it is appropriate to award fees at current rates "to compensate [counsel] for lost income they might have received through missed investment opportunities as well as lost interest." *Id.* Plaintiffs' counsel have demonstrated that their work on this case—particularly in the first year, when protests were ongoing—precluded them from taking on other cases, *see* Albies Decl. ¶ 19, ECF 326, and they have waited over three years for compensation. Further, the fee is substantial, further demonstrating the onerous nature of this delay. *See id.* (affirming district court's decision to grant fees at current rates where counsel "presented evidence that their work in this case precluded them from engaging in substantial work on other cases," the attorneys "waited over three years to be compensated" and the fee award was in the

4 – OPINION & ORDER

millions of dollars). Accordingly, the Court will award fees at the current rate, calculated by taking the rates from the Oregon State Bar Economic Survey and adjusting for inflation to February 2023, when this motion was filed.

ii.    Hourly Rate

In determining the reasonable hourly rate, the Court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also Robins v. Scholastic Book Fairs*, 928 F. Supp. 1027, 1033 (D. Or. 1996). "The relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.,* 815 F.2d 1258, 1263 (9th Cir. 1987). Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB Economic Survey") as a benchmark for assessing the reasonableness of hourly billing rates. *See* Local Rule 54-3 Practice Tip ("[T]he court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey."); *Roberts v. Interstate Distrib. Co.,* 242 F.Supp.2d 850, 857 (D. Or. 2002) (in determining the reasonable hourly rate, the District of Oregon uses the OSB Economic Survey "as an initial benchmark" and attorneys should "provide ample justification" for deviating from the Survey rates). Here, the Court relies on the OSB Economic Survey that was published in 2017.[2] Courts may also consider "the novelty and difficulty of the issues, the skill required to try

---

[2] The Court notes that since the filing of this motion the OSB has released the 2022 OSB Economic Survey, which describes billing rates for attorneys in 2021. *See* https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf. In their briefing,

the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).

Plaintiffs' counsel request high hourly rates, between the 75th and 95th percentile for attorneys in private practice in Portland in 2023 when using the OSB Economic Survey as a benchmark. The Court generally agrees with Defendant that an appropriate rate for most of the attorneys in this case is closer to the 75th percentile. The Court addresses the specific rates for each attorney below.

a.    J. Ashlee Albies

Ms. Albies seeks $560 per hour. According to the 2017 OSB Economic Survey, the 75th percentile hourly rate for a Portland attorney with 13 to 15 years of experience and 16 to 20 years of experience is $375 and $400, respectively. Adjusted for inflation to the month the motion was filed, this amounts to $467 and $498 per hour. The Court finds that a rate slightly higher than the 75th percentile is reasonable. Ms. Albies has an extensive civil rights and litigation experience that justifies an above-average hourly rate. *See* Albies Decl. But it is unclear what—if any— complex class action experience she has. Considering Ms. Albies' experience, leadership role in this case, and the nature of the issues presented, the Court finds that a rate slightly higher than the 75th percentile is warranted. Accordingly, the Court awards $500 for Ms. Albies' time in 2020 and $525 for time in 2021 and 2022.

///

---

however, the parties cite the 2017 OSB Economic Survey. *See* https://www.osbar.org/_docs/ resources/Econsurveys/17EconomicSurvey.pdf. As much of the work in this case was performed in 2020 and the 2022 OSB Economic Survey does not have information on the 75th percentile rates, the Court has used the 2017 OSB Economic Survey as a starting point in assessing the reasonable hourly rate. The Court also notes that—except for the rates of attorneys practicing for 0 to 3 years—the awarded rates are above the mean and median rates reflected in the 2022 OSB Economic Survey when adjusted for inflation.

b.      Whitney Stark

Ms. Stark seeks $560 per hour. According to the 2017 OSB Economic Survey, the 75th

percentile hourly rate for a Portland attorney with 16 to 20 years of experience is $400. Adjusted

for inflation, this amounts to $498 per hour. The Court finds that a slightly higher rate of $525 is

warranted for Ms. Stark given that her time spent on this case was directly related to her

expertise in complex class actions. *See* Albies Decl. ¶ 20. Accordingly, the Court awards $525

per hour for Ms. Stark's time.

c.      Maya Rinta

Ms. Rinta seeks $350 per hour. According to the 2017 OSB Economic Survey, the 75th

percentile hourly rate for a Portland attorney with 0 to 3 years of experience is $250. Adjusted

for inflation, this amounts to $311. The Court finds this rate is reasonable. Ms. Albies states that

Ms. Rinta's work product is superior to that of attorneys with more experience and that Ms.

Rinta has taken two cases—including a civil rights case—to jury trial. *See* Albies Decl. ¶ 21. Ms.

Rinta's background reflects experience in both criminal law and civil rights litigation as well as

involvement in the local legal community. Rinta Decl., ECF 331, However, the record does not

demonstrate that an adjustment above $311 is warranted, particularly since much of Ms. Rinta's

billed time was spent on less complex tasks such as interviewing witnesses, drafting declarations,

and conducting discovery. *See id.* ¶ 15.

d.      Jesse Merrithew

Mr. Merrithew seeks $550 per hour. According to the 2017 OSB Economic Survey, the

75th percentile hourly rate for a Portland attorney with 13 to 15 years of experience is $375.

Adjusted for inflation, this amounts to $467 per hour. Though Mr. Merrithew is an experienced

attorney and was a lead attorney on this case, his background involves a mix of civil rights and

criminal defense work. *See* Merrithew Decl. ¶ 3, ECF 327. Like Ms. Albies, it is also unclear from Mr. Merrithew's declaration the extent of his experience in complex civil rights class actions such as this one. *See id.* Accordingly, the Court finds that a rate of $467 per hour is appropriate in this case.

> e.    Viktoria Lo

Ms. Lo seeks $375 per hour. According to the 2017 OSB Economic Survey, the 75th percentile hourly rate for a Portland attorney with 0 to 3 years of experience is $250 and for an attorney with 4 to 6 years of experience is $300. Adjusted for inflation, this amounts to $311 and $373 per hour. Mr. Merrithew declares that Ms. Lo's work product is superior to that of most lawyers with her level of experience. Merrithew Decl. ¶ 10. During law school, Ms. Lo gained a variety of work experience in criminal law, immigration law, and civil rights law, and she has significant trial experience from her time as a public defender. Lo Decl. ¶ 5, ECF 330.  Ms. Lo began working as a civil rights attorney in 2019 when she transitioned to her current firm, where she spends about half of her time on civil rights cases. *See* Merrithew Decl. ¶ 10; Lo Decl. ¶ 8. Considering Ms. Lo's experience and the nature of this case, the Court finds that a rate of $311 per hour for work performed in 2020 and $373 for work performed in 2021 and 2022 is appropriate.

> f.    Sarah Noble

Sarah Noble—a paralegal at Mr. Merrithew's firm—seeks $150 per hour. Defendant does not appear to oppose Ms. Noble's rate. The Court finds that it is reasonable. *Nance v. May Trucking*, No. 3:12-cv-01655, 2014 WL 6633111, at *5 (D. Or. 2014) (awarding $125 per hour for the work of a paralegal in 2014).

///

g.    Juan Chavez

Mr. Chavez seeks $480 per hour. According to the 2017 OSB Economic Survey, the 75th percentile hourly rate for a Portland attorney with 7 to 9 years of experience is $340. Adjusted for inflation, this amounts to $423 per hour. Mr. Chavez's practice has almost exclusively involved civil rights litigation, and he is the project director managing a team of attorneys at the Civil Rights Project. Chavez Decl. ¶ 6, ECF 328. Mr. Chavez also has limited complex civil rights class action experience. *Id.* ¶ 9. The Court therefore awards Mr. Chavez $423 per hour, taking into consideration the nature of this case as well as his experience.

h.    Alex Meggitt

Mr. Meggitt seeks a rate of $375 per hour. According to the 2017 OSB Economic Survey, the 75th percentile hourly rate for a Portland attorney with 0 to 3 years of experience is $250 and for an attorney with 4 to 6 years of experience is $300. Adjusted for inflation, this amounts to $311 per hour and $373 per hour. Mr. Meggitt's background includes experience in criminal practice as well as time as a law clerk at the Multnomah County Circuit Court. Meggitt Decl. ¶¶ 4, 7, ECF 332. In 2019, he began working at the Civil Rights Project, trying three cases to a verdict in 2022. *Id.* ¶¶ 8, 10. Mr. Meggitt had five years of experience when this case resolved, and he has three years of experience practicing civil rights litigation. *Id.* ¶¶ 8, 15. Taken together, the Court finds that $311 for work performed in 2020 and $373 for work performed by Mr. Meggitt in 2021 and 2022 is reasonable.

i.    Franz Bruggemeier

Mr. Bruggemeier seeks a rate of $385 per hour. According to the 2017 OSB Economic Survey, the 75th percentile hourly rate for a Portland attorney with 4 to 6 years of experience is $300. Adjusted for inflation, this amounts to $373 per hour. Mr. Bruggemeier's background

includes internships during law school focused on civil rights litigation and a clerkship after law

school at the Oregon Court of Appeals. Bruggemeier Decl. ¶¶ 3–5, ECF 329. After his clerkship,

Mr. Bruggemeier spent a year and a half working on delinquency and dependency cases, where

he gained experience representing clients in both trial and appellate courts. *Id.* ¶ 6. He was hired

by the Civil Rights Project in 2019 and has taken two civil rights cases to a jury verdict and

assisted in a complex civil rights class action. *Id.* ¶¶ 7, 8. The Court finds that a rate of $373 is

reasonable.

      B.     Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case

were "reasonably expended" on the litigation and that counsel made "a good faith effort to

exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]"

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Frank Music Corp. v. Metro–*

*Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of

showing the time spent and that it was reasonably necessary to the successful prosecution of their

[ ] claims.").

Plaintiffs seek compensation for eight attorneys and one paralegal: (1) 595.3 hours of

work performed by J. Ashlee Albies; (2) 17.8 hours of work performed by Whitney Stark; (3)

146.5 hours for work performed by Maya Rinta; (4) 352.4 hours of work performed by Jesse

Merrithew; (5) 198.5 hours of work performed by Viktoria Lo; (6) 31.1 hours of work performed

by paralegal Sarah Noble; (7) 205.3 hours of work performed by Juan Chavez; (8) 137.5 hours of

work performed by Alex Meggitt; and (9) 623.9 hours of work performed by Franz

Bruggemeier.[3] Pls.' Mot. 3. Defendant objects to several categories of time spent by counsel. Without repeating in detail each of Defendant's objections and Plaintiffs' responses, the Court addresses each category of time below and deducts time from Plaintiffs' requested hours, as appropriate.

i.     Plaintiffs' Staffing Model

Defendant asks the Court to "reduce duplicative billing for court proceedings and internal strategy sessions to no more than two attorneys." Def. Obj. 4. The Ninth Circuit has cautioned that the district court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno,* 534 F.3d at 1115 (reversing the district court's decision to reduce a lawyer's hourly rate "in part because it thought that other firms could have staffed the case differently"); *see also Miller v. Schmitz*, 654 Fed. Appx. 261, 263 (9th Cir. 2016) (finding it was error for the district court to compare the amounts billed by lead attorneys and junior attorneys from both sides in determining the fee award). "The district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case." *Moreno,* 534 F.3d at 1115. The Court accordingly declines to impose the across-the-board reduction Defendant suggests for any inefficiencies that resulted from Plaintiffs' staffing model.

ii.     Duplicative or Excessive Hours

While "[a] party is certainly free to hire and pay as may lawyers as it wishes, [it] cannot expect to shift the cost of any redundancies to its opponent." *Nat'l Warranty Ins. Co. v.*

---

[3] The Court notes that Plaintiffs ask for 2.5 hours of Alex Meggitt's time and 1.4 hours of Franz Bruggemeier's time at a lower "investigator" rate.

*Greenfield,* No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D. Or. Feb. 8, 2001). For example, "[w]hen attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys. The same good 'billing judgment' requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument." *Id.* In determining whether hours were duplicative, courts should consider the complexity of the case or the extent to which the attorneys handled distinct aspects of the task billed. *See U.S. v. Montagne Development, Inc.*, No. 3:11-cv-01191-PK, 2014 WL 2334209, at *5 (D. Or. Mar. 10, 2014). "To correct for this duplication by two attorneys, the higher billing rate of the two attorneys should be allowed." *Miranda-Olivares v. Clackamas Cty.,* No. 3:12-CV-02317-ST, 2015 WL 5093752, at *8 (D. Or. Aug. 28, 2015); *see also Montagne Development, Inc.*, 2014 WL 2334209, at *5 (reducing duplicative hours for "multiple attorneys billing for the same mediation, the same conference with opposing counsel, or the same intra-office conference").

For almost all court appearances, Plaintiffs have not engaged in duplicative billing. For example, Plaintiffs only seek fees for two or three attorneys—usually the lead attorneys—to attend the oral argument on Plaintiffs' TRO hearing and telephone conferences with the court. Sheffield Decl. Ex. 3 at 1, ECF 343. The Court, however, finds the requested fees for the settlement conference, where Plaintiffs seek fees for six attorneys, and the contempt hearing, where Plaintiffs seek fees for seven attorneys, are unreasonable. *Id.* at 3. The Court will only allow Plaintiffs' counsel to recover fees for the three lead attorneys to attend the settlement conference and for the five attorneys who primarily participated in the contempt hearing each day. Therefore, it reduces the fee award by a total of 44.8 hours, totaling $16,796.20 using the rates determined above.

Regarding the meetings between attorneys, Sheffield Decl. Ex. 4, the Court finds that some of the requested hours were reasonable and necessary to the litigation. Three different firms collaborated in prosecuting this large, time-sensitive, and complex case, and some degree of coordination was required. However, the Court finds that it would not be reasonable to pass on the cost of more than one attorney from each firm or organization for many of these inter-office conferences to a fee-paying client. This results in a total deduction of 121.8 hours amounting to $43,387.40 in fees.

        iii.    Clerical Tasks

Defendant asks the Court to deduct 30 hours of clerical and administrative tasks from the fee award. Def. Obj. 4. "It is well settled, both in this District and elsewhere, that it is inappropriate to seek fees under a fee shifting statute for purely secretarial or clerical work." *Lafferty v. Providence Health Plans*, No. 08-CV-6318-TC, 2011 WL 127489, at *5 (D. Or. Jan. 14, 2011) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate regardless of who performs them. . . .")).

The entries identified by Defendant in Exhibit 5 all constitute clerical work. For example, Plaintiffs seek fees for scheduling, downloading and saving documents, organizing documents, preparing exhibits, and filing documents. Sheffield Decl. Ex. 5. One entry, however, may include non-clerical work as it describes finalizing a reply brief. *Id.* at 2. But it is block-billed with other administrative tasks, including preparing exhibits, filing, and saving documents to the file. *Id.* The Court therefore will reduce this entry by 50% to account for administrative tasks. Accordingly, counsels' overall request is reduced by 28.95 hours totaling $4,809.2.

///

iv.    Vague Entries and Block Billing

Defendant identifies over 50 hours of block-billed time and asks the Court to impose a 20% reduction in fees for these hours. Def. Obj. 5. The burden is on the party requesting fees to provide sufficient documented evidence of the hours claimed, and the court should reduce hours that are "excessive, redundant, or otherwise unnecessary." *U.S. v. Montagne Deve., Inc.*, 2014 WL 2334209, at *5–6. The U.S. District Court for the District of Oregon recommends that attorneys refrain from block billing as this makes "assessing the reasonableness of the time spent on a particular task extremely difficult."[4] "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metro Life Ins. Inc.*, 480 F.3d 942, 948 (9th Cir. 2007).

Thus, it is "reasonable for the district court to conclude that [the fee applicant] fail[s] to carry [their] burden" where block billing is used because it "makes it more difficult to determine how much time is spent on particular activities." *Id.* Under such circumstances, the district court can impose a reduction on the hours that are block billed. *See id.* ("[T]he district court may properly impose a reduction for block billing, but it should explain how or why the reduction fairly balances those hours that were actually billed in block format." (internal quotations and citations omitted)); *see also Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2013 WL 4012708, at *10 (D. Or. Aug. 5, 2013), *amended*, No. 3:09-CV-00239-HZ, 2014 WL 837389 (D. Or. Mar. 3, 2014), aff'd, 649 F. App'x 585 (9th Cir. 2016) (applying a 25% reduction for block billing, vague entries, and billing in large increments to those entries that

---

[4] *See* Message from the Court Regarding Fee Petitions, https://www.ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions.

suffer from block billing and vagueness); *Nance v. May Trucking*, No. 3:12-cv-01655, 2014 WL 6633111, at *5 (D. Or. 2014) (same).

As Defendant points out, there are a number of block-billed entries in this case, some of which contain administrative tasks. *See* Sheffield Decl. Ex. 6. For example, counsel seeks fees for 9.2 hours of work that includes "sending decs out for signature" in addition to calling witnesses, gathering and writing declarations, communicating with the legal team, reviewing video footage, reviewing declarations drafted by other lawyers, and creating a spreadsheet of witnesses. *Id.* In another entry for 3 hours of work, counsel bills for calling co-counsel, calling the client, reading "other directives," and "discussing draft email with team." The Court will reduce these block-billed entries by 20%. *See Welch*, 480 F.3d at 948 (noting that the district court has the authority to reduce fee awards for block billing and that a California State Bar Committee Report concluded block billing could increase time by 10% to 30%). The Court, however, will not reduce fees for the following entries where the tasks were clearly identified with one subject matter such that it could independently determine that the time spent was reasonable: (1) 8.6 hours billed by Ms. Lo on June 5, 2020; (2) 2.9 hours billed by Ms. Albies on June 7, 2020; (4) 3.1 hours billed by Ms. Lo on October 19, 2020; and (5) 4.4 hours billed by Mr. Merrithew on December 1, 2021. Sheffield Decl. Ex. 6. Taken together, this results in a reduction of $1,269.18.[5]

///

---

[5] In calculating the ultimate award, the Court has not deducted hours twice where there are multiple objections to the fee. For example, the Court will not reduce the 7 hours billed by Sarah Noble on 1/19/2022 that Defendant identified as "block billed" as this was already deducted from the fee award as clerical work. Similarly, the Court also has not considered here: 3.5 hours billed by Jesse Merrithew on 6/20/2020 as this amount was deducted because it is a vague billing entry for unidentified witnesses; and 8.9 hours billed by Ms. Lo on 6/29/2020 because it was related to an unfiled contempt motion.

v.      "Press/Training/Unrelated Matters"

Defendant asks the Court to reduce Plaintiffs' fee award for time spent (1) strategizing with the press, (2) training attorneys and consulting a contractor on the use of discovery software, (3) pursuing or investigating litigation against other government entities, and (4) conferring with other attorneys regarding other cases against the City or other defendants. Def. Obj. 5.

With regard to the hours spent on "press/media," it appears that Plaintiffs' counsel is only seeking fees for 2 hours spent by Ms. Albies on July 22, 2022. Plaintiffs' counsel have voluntarily withdrawn this request. Pl. Reply 7 n.1, ECF 345. Accordingly, the Court deducts $1,000 from the fee award to account for these hours.

The Court also agrees with Defendant that time spent on "discovery software trainings" and unrelated legal matters should be deducted from the fee petition. *See* Sheffield Decl. Ex. 8, 9, 10. Plaintiffs' counsel have not demonstrated that they should recover time spent on training and consultation with a contractor on the use of a new discovery system. Counsel seeks over $9,000 in fees for time spent "exploring" the new database, demonstrations of the discovery software, calls and meetings with the contractor, and trainings. Sheffield Decl. Ex. 8. While counsel has demonstrated that the complexity of this case required the use of a new discovery system, *see* Second Merrithew Decl. ¶ 7, they have not demonstrated that this cost is one that would be reasonably passed on to a fee-paying client as opposed to an overhead cost that a firm would absorb, *see Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 WL 11120966, at *11 (E.D. Wash. June 19, 2015) ("Whether or not Plaintiffs concede this issue, the Court concludes that in-house training on the use of document management software is not a cost that would be charged to a client by private counsel, but is instead an overhead cost like any other software

training that law firms provide their employees from time to time."). This amounts to a total reduction of 18.5 hours amounting to $8,367.50.

Counsel also should not recover all the requested time spent pursuing or investigating litigation against the federal government, on claims against the County, or for outside coordination of litigation. Plaintiffs have not demonstrated how investigating claims against nonparties were "reasonably necessary" to this litigation. The Court agrees with Plaintiffs that some collaboration with counsel handling other protest cases was reasonably necessary for the sake of efficiency and to avoid potential conflicts with other cases, particularly in light of the injunctive relief requested in many of these cases. However, for most entries the Court is unable to discern whether the time spent was necessary to achieve these ends. For example, counsel seeks fees to discuss potential avenues for joint litigation with the ACLU, but it is unclear to the Court how such meetings advanced this case. *See* Sheffield Decl. Ex. 10 at 1. Similarly, many entries are vague, noting "call with co-counsel, other counsel re strategy," "joint litigation meeting," "call with Chicago attorney re: legal response to protests," and "coordinating call to FPD." *Id.* With this in mind, the following hours will be allowed as reasonably necessary to the litigation in this case:

| 7/21/2020 | J. Ashlee Albies | 0.6 | discussion with attorneys re other cases re similar issues (.6) |
| 9/25/2020 | J. Ashlee Albies | 1.0 | Meeting with other case leaders re strategy and check in (1.0) |
| 12/16/2021 | Jesse Merrithew | 0.9 | Conf call with legal team for Index Newspapers -- update on their case to help strategize re city's mootness argument. |
| 2/7/2022 | J. Ashlee Albies | 0.5 | call with J Merrithew and S Payne re mootness (.5) |
| 2/7/2022 | Jesse Merrithew | 0.5 | TEC A Albies, S Payne re coordinating efforts on city's mootness argument |

All other hours identified in Defendant's Exhibits 9 and 10 will be deducted from the fee petition. Taken together, the Court therefore reduces Plaintiffs' fee petition by 39.2 hours, amounting to $17,856.20.

    vi.  SITU Video Compilation

Defendant asks the Court to exclude all fees related to the SITU video created for the contempt hearing, emphasizing that most of the hearing was conducted without the SITU video and that the Court did not rely on it in its Opinion & Order. Def. Obj. 5–6. The Court finds that the SITU video compilation was not a reasonable expense that would be passed on to a fee-paying client. Counsel seeks over $20,000 in fees—in addition to the $146,325 in costs addressed below—related to the production of this video. Ultimately, the use of the SITU video at the hearing was quite limited, with Plaintiffs relying largely on the underlying video exhibits in lieu of the compilation. Evid. Hr'g Tr., ECF 209, 210. In addition, there were issues with the audio when it was used. *See* Evid. Hr'g. Tr. 64:1-4, 65:9-15, 69:9-13 (noting a stutter, choppy audio), 72:11-19 (describing dialogue because it was inaudible at the hearing), ECF 209. And the Court did not rely on it in its Opinion on Plaintiffs' motion, instead using the underlying video exhibits. The Court finds that spending this significant sum of money on this video was not reasonable. Accordingly, the Court deducts 46.7 hours amounting to $19,740.40 from the fee petition.

    vii.  Monitoring Protests & Witness Meetings

Defendant seeks a reduction in the fee award for hours spent monitoring protest activities in 2020 and 2021. Def. Obj. 6. Defendant also asks the Court to reduce the award for time spent "speaking to witnesses who appear unconnected to any witness utilized in this case." *Id.*

Plaintiffs cannot recover much of the sought-after time for hours related to protest monitoring and unidentified witnesses. *See* Sheffield Exs. 12, 13, 14. As with the hours requested for collaborating with outside attorneys, many of these billing entries are too vague for the Court to determine the reasonableness of the requested time. For example, Plaintiffs seek fees for time spent on "review of videos of ppb violence and weapons use," "review of reports," and interviewing witnesses and drafting declarations unconnected to any specific date or person. *See* Sheffield Decl. Exs. 12, 13, 14. These hours will be disallowed. The Court will, however, allow recovery of fees that are clearly related to the dates of protests relevant to the motion for contempt or motion for class certification. *See, e.g.,* Sheffield Decl. Ex. 12 at 2 (billing entries refer to review of evidence from June 30). Altogether, this results in a reduction of 114.9 hours amounting to $44,434.50 from the fee petition.

> vii.    Withdrawn or Unsuccessful Work

Defendant objects to fees for withdrawn or unsuccessful motions, including: (1) a withdrawn contempt motion; (2) Plaintiffs' amended contempt motion; and (3) Plaintiffs' class certification motion. Def. Obj. 6–8.

Turning first to the filed Contempt Motion, the Court finds that the sought-after costs are reasonable. While Plaintiffs were not successful on all of the identified uses of force that they alleged violated this Court's orders, they were ultimately successful in demonstrating that the Portland Police Bureau had violated the Court's TRO and preliminary injunction. *See* Op. & Order, ECF 204. This resulted in sanctions against the City requiring additional training, limitations on the use of force, and ultimately contributed to their success in this case. Accordingly, the Court allows these fees.

As to the unfiled contempt motion, Plaintiffs should only be allowed to recover hours that clearly "set the groundwork for the later successful contempt motion." Pl. Reply 10. Plaintiffs assert that this motion was withdrawn after extensive conferral with the City but do not describe how it furthered the litigation beyond the general statement that it set the groundwork for a later contempt motion. Further, many of the entries request hours unrelated to June 30, the focal point of the contempt motion that was ultimately filed. *See* Sheffield Decl. Ex. 15. Accordingly, the Court will allow recovery of hours that are clearly related to the events of June 30. The remaining hours—46.1 hours amounting to $17,257.50—will be deducted from Plaintiffs' fee request.

The Court also agrees with Defendant that they should not recover some of their fees related to the class certification motion. While an adverse ruling, alone, does not necessitate a wholesale denial of a fee request, *Cabrales v. Cnty. Of Los Angeles*, 935 F.2d 1050, 1052–53 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have suffered some adverse rulings), it is ultimately unclear the extent to which Plaintiffs' class certification motion was related—at least legally—to the merits of their claims given that summary judgment was never filed, *see O'Neal v. City of Seattle*, 66 F.3d 1064, 1068–69 (9th Cir. 1995) (affirming the district court's decision to award attorneys fees for an unsuccessful class certification motion where the class certification motion was not unrelated to the plaintiff's claims).

In this case, Plaintiffs' argument for class certification was weak. The Court advised Plaintiffs that it would be "challenging . . . to put together groups of individuals and satisfy the typicality and commonality and numerosity requirements of Rule 23" given the variability inherent in the incidents underlying this case. Sheffield Decl. Ex. 22 (Transcript of Scheduling

Conference re: Class Certification) at 9:22–10:12. Mr. Merrithew also acknowledged in his own declaration that Plaintiffs "knew that there was a significant chance that the Court would not agree to certify a class." Merrithew Decl. ¶ 28. And many of the legal issues involved in the motion were distinct from the ultimate merits of the case. For example, Plaintiffs seek compensation for research involving the elements of commonality, duty of the class representative, and protest class actions. *See* Sheffield Decl. Ex. 19. These will be deducted from the fee award. By contrast, the Court has no doubt that most—if not all—of the fact development was relevant to the merits of Plaintiffs' claims and likely contributed to the parties' ultimate settlement. Accordingly, the Court deducts 205.4 hours—or $91,688.40—from Plaintiffs' request related to class certification, allowing hours that were related to the fact development and discovery underlying the motion.

C.      Lodestar Amount

Considering the hours reasonably expended and the reasonable hourly rate for each of Plaintiffs' attorneys, this Court's calculation of the Lodestar is as follows:

| | |
|---|---|
| Baseline Request Calculated Using the Reasonable Hourly Rates Determined Above | $966,235.90 |
| *Deduction for Duplicative Billing* | ($60,183.60) |
| *Deduction for Clerical Tasks* | ($4,809.20) |
| *Deduction for Block Billing* | ($1,269.18) |
| *Deduction for Time Spent with Press* | ($1,000) |
| *Deduction for Trainings* | ($8,367.50) |
| *Deduction for Unrelated Claims/Outside Conferral* | ($17,856.20) |
| *Deduction for SITU Video* | ($19,740.40) |
| *Deduction for Monitoring & Witness Meetings* | ($44,434.50) |
| *Deduction for Withdrawn Contempt Motion* | ($17,257.50) |
| *Deduction for Unsuccessful Class Certification Motion* | ($91,688.40) |
| TOTAL: | $699,629.02 |

///

///

D.    Adjustments to the Lodestar

Plaintiffs identify three *Kerr* factors that may warrant an adjustment to the Lodestar in this case: (1) the skill requisite to perform the legal service properly, (2) the preclusion of other employment by the attorney due to acceptance of the case, and (3) the time limitations imposed by the client or the circumstances. Pl. Mot. 10. The Court disagrees. The skills required by the attorneys were considered in the hourly rates as described above, and the Court has already allowed counsel to recover fees at present—rather than historical—rates partially in consideration of the preclusion of other employment. Though the time limitations in this case were significant in 2020 while protests were ongoing, the Court does not find that this warrants an adjustment to the Lodestar for the entire fee award, particularly given that the Court has allowed counsel to recover fees for much of the collaboration required between firms because of the demanding nature of this case. Accordingly, no enhancement is warranted.

## II.    Costs & Other Expenses

The Offer of Judgment also entitles Plaintiffs to recover "reasonable, legally recoverable" costs to be determined by the Court under Federal Rule of Civil Procedure 54. Offer of J. Under Rule 54, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); *Ass'n of Mexican–Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000). Costs taxable under Rule 54(d) "are limited to those set forth in 28 U.S.C. §§ 1920 and 1821[.]" *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005). Section 1920 lists the specific items a prevailing party may recover as costs:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

     (5) Docket fees under section 1923 of this title;

     (6) Compensation of court appointed experts, compensation of interpreters, and
         salaries, fees, expenses, and costs of special interpretation services under
         section 1828 of this title.

28 U.S.C. § 1920(1)-(6).

In addition, both the statute that would normally govern the Plaintiffs' fee award and the terms of the Offer of Judgment expand the scope of recoverable costs in this case. *See Smith v. Gen. Info. Services, Inc.*, No. 1:17-cv-00542-DAD-SAB, 2019 WL 2106171, at *7 (E.D. Cal. May 14, 2019) (allowing recovery of costs beyond those identified in 28 U.S.C. § 1920 where both the relevant statute and offer of judgment allowed recovery of non-taxable costs). Under 42 U.S.C. § 1988, recoverable costs include those listed in 28 U.S.C. §§ 1920 and 1921 as well as "'those [reasonable] out-of-pocket expenses that would normally be charged to a fee-paying client.'" *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). The terms of the Offer of Judgment also provide that Plaintiffs should recover reasonable, legally recoverable costs. Offer of J.

Plaintiffs request $259,886.20 in costs. Defendant argues for a substantial reduction in the requested costs and contends that Plaintiffs should not recover: (1) $146,325 in costs related to the SITU video complication; (2) $3,405 for video depositions of Defendant's 30(b)(6) witnesses; (3) costs Defendant alleges are not explained by Plaintiffs or self-explanatory, including $240 for an Airtable annual membership fee and $32 for "Investigation Costs," Def. Obj. 9 (citing Sheffield Decl. ¶¶ 35, 36); and (4) investigator costs where the time can not be identified with any of Plaintiffs' claims or witnesses, Def. Obj. 6; Sheffield Decl. ¶ 20. For the reasons stated below, the Court awards Plaintiffs $84,697.20 in costs as part of the fee award.

///

///

23 – OPINION & ORDER

A.    Costs for Videotaped Depositions

Defendant opposes Plaintiffs' request for costs associated with videotaping depositions. Though the Ninth Circuit has yet to address this issue, judges in this district have denied requests to recoup these costs. *See Hunt v. City of Portland,* No. CV 08-802-AC, 2011 WL 3555772, at *7 (D. Or. Aug. 11, 2011) (absent a showing of "necessity" under Rule 54, the petitioner could not recover the costs associated with videotaped depositions); *U.S. ex rel. Berglund v. Boeing Co.,* No. 03:02-CV-193-AC, 2012 WL 697140, at *3 (D. Or. Feb. 29, 2012) (collecting cases). Plaintiff has the burden of demonstrating why the video deposition was needed and a written transcript would not have sufficed. *cf. adidas Am., Inc. v. Herbalife Int'l, Inc.,* No. 3:09-CV-00661-MO, 2012 WL 13051118, at *1 (D. Or. Sept. 5, 2012) (The court awarded costs for videotaped depositions where the litigation was particularly antagonistic and large-scale, rendering "both video deposition and stenographic transaction costs particularly necessary."). As Plaintiffs have not demonstrated why the video depositions were necessary, Pl. Reply 11 (stating that Plaintiffs "fully intended on using such videos at trial, and possibly at summary judgment"), the Court will not allow Plaintiffs to recover costs associated with videotaping depositions. The Court therefore reduces Plaintiffs' cost bill by $3,405.

B.    SITU Video

As described in Part I.B.vii above, the Court has concluded that the significant cost of the SITU video—which was neither necessary nor useful in this case—is not a reasonable expense that would normally be passed on to a fee-paying client. Accordingly, the Court denies Plaintiffs' request for $146,325 associated with the production of the SITU video. Albies Decl. Ex. 7; Merrithew Decl. Ex. 4.

///

C.        Investigator Time

Defendant objects to the investigator fees charged by Sophia Jewett, Banafesh Violet Nazari, Brian Koelling, and Insight Legal Investigations. Sheffield Decl. ¶ 20. Investigator fees are recoverable fees as reasonable expenses that would normally be charged to the fee-paying client. *See Syed v. M-I, L.L.C.*, No. 112CV01718DADMJS, 2017 WL 3190341, at *8 (E.D. Cal. July 27, 2017) (allowing investigator fees to search for class members). Defendant argues, however, that the fees of Sophia Jewett, Brian Koelling, and Insight Legal services should be disallowed because there is insufficient information to determine whether the fees are reasonable, and that the fees of Banafesh Violet Nazari should be reduced from $350 per hour to $150 per hour.

The invoices for Ms. Jewett and Mr. Koelling are vague and do not contain sufficient detail for the Court to determine whether these investigation services were reasonably necessary. *Cf. Scruggs v. Josephine Cnty.*, No. CIV 06-0658-CL, 2009 WL 650626, at *8 (D. Or. Mar. 10, 2009) (allowing investigator fees where services produced an important witness, were done at a lower rate than that of an attorney, and the defendant did not object to the amount claimed). For example, many of the entries from Ms. Jewett simply refer to "calling people" and taking notes, and the witnesses that are referred to by name do not appear to have been used in this litigation. *See* Albies Decl. Ex. 6. The invoice from Mr. Koelling is even more vague, referring only to "calls" and "declaration writing." *Id.* at Ex. 9. Insight Legal Investigation provided services monitoring protests throughout 2020 on some nights relevant to Plaintiffs' claims, including the evening that was the focal point of Plaintiffs' motion for contempt and nights that were relevant to the motion for class certification. However, the remaining entries suffer from the same problems as the other investigators and Plaintiffs' counsel: they are too vague for the Court to

determine whether they are reasonable. Merrithew Decl. Ex. 3. Notably, too, Plaintiffs do not address these objections in their reply. Accordingly, the Court disallows these costs except for $12,975 related to the evening of June 30 and the nights at issue in Plaintiffs' motion for class certification. Altogether, this amounts to a deduction of $23,819.

As for the time billed by Ms. Nazari, the Court agrees with Defendant that sought-after rate of $350 per hour is too high. An hourly rate of $150—the same rate Mr. Bruggemeier, Mr. Meggitt, and Insight Legal Investigation charged for investigatory work—is reasonable. Accordingly, Plaintiffs can recover $1,050 for the work of Ms. Nazari, which reduces Plaintiffs' costs by $1,400. *See* Albies Decl. Ex. 4.

D.    Other Costs

Defendant also objects to costs billed by Plaintiffs that are "neither explained by Plaintiffs or self-explanatory." Def. Obj. 9 (citing Sheffield Decl. ¶ 36). The Court finds that the fee to access an article related to Plaintiffs' *Monell* claims is a reasonable expense in this case. *See* Albies Decl. Ex. 3 at 1; Pls. Reply, 11. Plaintiffs have not demonstrated, however, how the Airtable subscription—a tool used to organize witness information and videos—is a reasonable cost that would normally be passed on to a fee-paying client instead of an overhead cost like the discovery software discussed above. *See* Pls. Reply 11 (arguing only that the expense is "self-explanatory and compensable.").

Defendant does not object to Plaintiffs' remaining costs. The Court awards these costs as either allowable under the statute or reasonable out-of-pocket expenses normally charged to a fee-paying client.

///

///

## CONCLUSION

Plaintiffs' Motions for Attorney's Fees and Costs [325] is granted in part. Plaintiffs are awarded $699,629.02 in fees and $84,697.20 in costs.

IT IS SO ORDERED.


Dated: _____ September 24, 2023 _____.


_____
MARCO A. HERNÁNDEZ
United States District Judge

27 – OPINION & ORDER